[No. 20523. Department One. September 6, 1927.]

A. M. LAUGHNEY, *Appellant,* v. CHARLES MAYBURY, *as Director of Licenses, et al., Respondents.*[1]

[1] CONSTITUTIONAL LAW (48) — PHYSICIANS AND SURGEONS (1) — POLICE POWER—PRACTICE OF MEDICINE — REGULATION. Statutes regulating the practice of medicine concern the health, comfort and general welfare of the public, are founded on the police power, and do not violate any constitutional provision with reference to liberty or the rights of property, if within other safeguards.

[2] CONSTITUTIONAL LAW (116)—EQUAL PROTECTION OF LAWS—REGULATION OF BUSINESS—ADVERTISING BY PHYSICIAN. Rem. Comp. Stat., § 10063, prohibiting certain kinds of advertising by physicians, commonly known as the laudatory "come to me" advertising, is not unconstitutional as prohibiting all character of advertising by certain classes, where the regulation no doubt

[1]Reported in 259 Pac. 17.

was in response to the prevailing opinions and demands of the public and the majority of the practitioners involved.

[3] SAME (116). Regulation of medical advertising is not discriminatory as to osteopaths, in violation of Const., Art. 1, § 12, where Rem. Comp. Stat., § 10063 prohibits advertising by osteopaths other than a professional card, window or street sign, and Id., § 10015, prohibits advertising of medical business having a tendency to deceive *or* impose upon the credulous and so be harmful to public morals or safety.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered January 31, 1927, in favor of the defendants, upon sustaining a demurrer to a complaint to enjoin the revocation of a physician's license. Affirmed.

*Stanley J. Padden* and *George F. Ward,* for appellant.

*The Attorney General* and *L. B. Donley, Assistant,* for respondents.

MITCHELL, J.—A. M. Laughney is a licensed and practicing osteopathic physician and surgeon of this state. A duly verified complaint charging him with unprofessional conduct, as defined by Rem. Comp. Stat., § 10063 [P. C. § 4303-10], was filed with the director of licenses of the state. The complaint charged him with exceeding the limit of advertising prescribed by the regulations in that statute in that, in daily newspapers and by means of a pamphlet which was circulated, he engaged in what may be here spoken of as self laudatory, "come to me" advertising, as it is spoken of by the writers on professional ethics, and, indeed, as it is commonly understood. Upon the complaint being filed, a citation was issued and served directing him to appear before a committee regularly constituted under statute, to answer and show cause why his license should not be revoked. He made and filed an answer admitting that he had advertised as the complaint

charged and, further, pleaded the invalidity of the act and the lack of power in the committee, under certain provisions of the state constitution and the Fourteenth Amendment to the Federal constitution.

Before any hearing was had before the committee, he commenced the present injunction proceeding in the superior court, setting up the facts in the case, including the complaint against him and his answer thereto before the committee, together with the citation and the fixing of a return day for the hearing. The defendants in the case filed a general demurrer to the complaint in the superior court. The demurrer was sustained and the plaintiff, electing not to plead further, has appealed from a judgment dismissing his action in injunction.

Some contentions as to the law are made by the appellant in his pleadings that have been abandoned or, at least, are not urged by him in his presentation of the case on appeal. We shall notice the case as it is argued here.

[1] As to the right of a physician or surgeon to be protected in his profession under the guarantees of both constitutions, there is, of course, no doubt. It may be stated, generally, that anyone has a right to pursue any lawful calling, yet, in respect to certain vocations not in themselves unlawful, including the practice of medicine and surgery, the right is necessarily and properly subject to legislative restrictions or regulations from consideration of public policy. They are vocations which, from time to time and in one way or another, very nearly concern the health, comfort, life and general welfare of every person, and statutes designed to accomplish such restrictions or regulations are founded upon the police power inherent in the state. *State v. Carey,* 4 Wash. 424, 30 Pac. 729; *State v. Greiner,* 63 Wash. 46, 114 Pac. 897; *State ex rel.*

*Smith v. Board of Dental Examiners,* 31 Wash. 492, 72 Pac. 110. They do not violate any constitutional provision with reference to liberty or the rights of property as long as they are within other safeguards.

[2]   The second argument is that the law upon the subject of advertising, Rem. Comp. Stat., § 10063 *supra,* prohibits all character of advertising by an osteopathic physician and surgeon, rather than an attempt to regulate it, and that it is therefore in violation of constitutional rights. The statement with reference to the contents of the statute is not wholly true, nor, of course, can we agree with the conclusion or argument that its provisions are in violation of constitutional rights. The statute specifically mentions certain kinds of advertising that may be done and prohibits other kinds. That it prohibits, and was intended to prohibit, the kind of advertising with which the appellant was charged, and which he admitted, is doubtless true and, in our opinion, is valid. We have no doubt that the regulation or prohibition was in response to the prevailing opinion and demands of the public, including the vast majority or nearly all of the osteopathic physicians and surgeons themselves, and that the legislature so understood it, not simply from the standpoint of professional ethics, as argued on behalf of the appellant, but as suited and necessary for the common welfare. The view of the legislature as to the facts and necessity for the regulation we will not review or question.

In *Noble State Bank v. Haskell,* 219 U. S. 104, it was said:

"It may be said in a general way that the police power extends to all the great public needs. *Camfield v. United States,* 167 U. S. 518. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion

to be greatly and immediately necessary to the public welfare."

A well reasoned case, in principle, upon this subject of the right of a state, through its police power, to interfere, as it is sometimes termed, with the right of a person to pursue any calling harmless in itself in his own way is *Thompson v. Van Lear,* 77 Ark. 506, 92 S. W. 773, 7 Ann. Cas. 154, 5 L. R. A. (N. S.) 588. It covers this subject completely and satisfactorily. It held to be valid a statute prohibiting physicians and surgeons from soliciting patients by agents or drummers. All of the case is needed for its full effect and is commended for its practical reason, all of which we think is applicable to the present case. Indeed, after that decision, the state of Arkansas enacted a law authorizing the revocation of a license to practice medicine for publicly advertising special ability to treat or cure certain classes of diseases. The law was held to be valid in *State Medical Board v. McCrary,* 95 Ark. 511, 130 S. W. 544, 22 Ann. Cas. 631, 30 L. R. A. (N. S.) 783, the court saying:

"In the case of *Thompson v. Van Lear,* 77 Ark. 506, 92 S. W. 773, 5 L. R. A. (N. S.) 588, 7 Ann Cas. 154, this court held that an act forbidding physicians and surgeons to solicit patients by paid agents was a valid exercise of the police power. For like reason, a statute forbidding a physician to advertise for patients in newspapers would be upheld; and, by analogy, a statute forbidding them to advertise their ability to treat and cure certain named diseases would be a valid exercise of the police power."

By a divided court, the supreme court of Colorado, in the case of *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 Pac. 132, Ann. Cas. 1915D 1188, 51 L. R. A. (N. S.) 958, held a statute against causing the publication and circulation of an advertisement relative to any disease of a specified part of the

body to be invalid and violative of constitutional rights. That case is relied on by the appellant and we think, as stated by the respondents, that, if it is to be followed, the judgment in the present case must be reversed. But, with all due respect to the majority opinion in that case, we decline to follow it. It contains arguments more nearly approaching the kind ordinarily used by that school of thought who would commercialize a splendid profession in their addresses to a legislature, having under consideration the enactment of a law containing regulatory measures, than the kind appropriate to a court when called upon to declare a solemn act of the legislature to be unconstitutional. The question decided in the Colorado case was decided the other way in *Kennedy v. State Board of Registration in Medicine,* 145 Mich. 241, 108 N. W. 730, and *State v. Hollinshead,* 77 Ore. 473, 151 Pac. 710, as was done in the Arkansas case, and we prefer to follow these cases.

Still, upon this point, appellant, admitting the reach of the police power to some extent in this class of cases, seems to complain that the regulation is too sweeping, that it must go no further than is reasonably necessary, and, as we understand upon the brief and oral argument, the suggestion is made that certainly there are some kinds of advertisements beyond those allowed by the statute which, under no consideration, could be harmful and that the legislature, in fairness, should have in some way furnished a guide or standard for that purpose—an interminable, impossible task. Of such an undertaking this court said in *State Board of Medical Examiners v. Jordan,* 92 Wash. 234, 158 Pac. 982:

"Our own statute, far more specific, enumerates seven things that constitute unprofessional conduct. The one relating to advertisement cannot well be made more specific. To describe in express terms a faulty

advertisement is practically to instruct the defendant how to evade it, and as to the limitless variations of language, symbols, and verbal or pictorial allurements, no human ingenuity could possibly anticipate and forestall them.''

[3] It is further claimed that to allow regular physicians to advertise, while prohibiting the same privilege to osteopaths, is discriminatory and in violation of § 12, Art. I of the state constitution. The contention indicates a misconception of the language of the two statutes and of the evils intended to be remedied. The law applicable to osteopaths, Rem. Comp. Stat., § 10063, *supra,* prohibits advertising of any kind other than a professional card, window or street sign; exploiting or advertising through the press or by the use of hand bills, circulars or other periodicals, other than professional cards giving an address, profession, office hours and telephone connection. The statute applicable to physicians and surgeons of the regular school, Rem. Comp. Stat., § 10015 [P. C. § 3738], prohibits all advertising of medical business which is intended, or has a tendency, to deceive the public *or* impose upon credulous or ignorant persons and so be harmful or injurious to public morals or safety. So that, as already stated, the osteopath is allowed by a specific enumeration to do certain advertising, not permitted to the regular school expressly, but by implication only. These statutes, as well as those upon the same subject applicable to the dentist, the chiropractor and the drugless healer, although differing somewhat in each case, in the language employed are essentially the same in design and, of course, must be interpreted and understood with reference to the evils the legislature meant to remedy and prevent.

It is well known that the theory and cure of diseases is not an exact science, and that often two persons ap-

parently similarly afflicted, given the same approved treatment, will, in the one case, be cured or benefited, while in the other case there will be no substantial improvement, notwithstanding advertisements and pretensions to the contrary. The causes of diseases and restoration to health are often obscure, even to the trained mind of the physician, and it is common knowledge that frequently persons of good health are prone to imagine they are in need of treatment and that one thus afflicted, or if he is suffering from some actual bodily disease, is more easily imposed upon than one who possesses a sound mind and body.

"He is inclined to grasp at shadows and pursue the wind, and is easily misled into paying money for treatment he does not need."

His venture is not like the purchase of some tangible object that may be examined and approved before concluding a contract, but it is a matter of faith, trust or opinion leading to treatment that must be paid for, whether beneficial or not. Such persons, whether otherwise ignorant or not, are unduly susceptible to undue influence and persuasion, whether the one who wielded the influence so intended it or not, and it is the design of these laws against unprofessional conduct to protect such persons and to declare, in legal effect, in all of them, as it does specifically in § 10015, *supra,* as a matter of public policy that all advertising of medical business, which is intended, or has a tendency, to deceive the public or impose upon credulous or ignorant persons and so be *harmful or injurious to public morals or safety* constitutes unprofessional conduct. This language, used in relation to physicians and surgeons of the regular school, is broad and sweeping and, under the rule that the whole includes all of the parts, instead of there being unjust discrimination against the school to which the appellant belongs, it may be

argued with considerable show of reason that he is simply included within the declared public policy. The rule applicable to the regular school may, according to the facts in a given case, comprehend the other, at least to an extent within the pleadings or complaint against the appellant in the present case, according to the facts that may be adduced and in the judgment of the triers of the facts.

But let the dominant and manifest purpose and design of all these statutes be waived, and let it be assumed there is some slight difference in the rule for the osteopaths as compared with the rule for the regulars. The legislature has the right to classify, and through all the years it has treated these different schools, also chiropractors, drugless healers, chiropodists and dentists, as belonging to different classes. Any act pertaining to any one of them has been a separate and distinct act. Different qualifications are required and different examinations given. The means employed by the different schools for the treatment of diseases are different and, in some cases, limitations imposed as to the diseases that may be treated.

Chiropody is defined by the statute to be the surgical and medical treatment of bunions, corns, abnormal nails, warts, callouses and all superficial excrescences, not including surgical operation upon hands or feet for congenital or acquired deformities or conditions, and the statutes regulating the practice of it are ch. 38, p. 186, Laws of 1917, and the amendatory act, ch. 120, p. 380, Laws of 1921 [Rem. Comp. Stat., § 10074]. By § 18, p. 191, [Rem. Comp. Stat., § 10091], of the first one of these acts, it is provided that nothing in the act shall be construed as preventing any licensed physician, surgeon, osteopath or other person licensed to treat the sick from treating the hands and feet by the method and means permitted by his license, and in

neither act is there any provision, in terms, against the chiropodist advertising his business, treatment or cures. Is that an unjust discrimination against the osteopaths or other schools that would justify the appellant in contending that the regulation complained of in the osteopathic law is violative of his constitutional right? No such complaint or argument is made. Again, suppose the law relating to dentists, who treat certain diseases, was silent upon the subject of one advertising his profession and treatment of disease. Would it afford appellant any just grounds of complaint? Such arguments, and those presented by the appellant, appear to us to be more fanciful than real, when it comes to a consideration by the courts of the power, judgment and discretion of the legislature in enacting laws under the police power of the state.

The limitations imposed against class legislation admit of a wide discretion in this respect, that is, as to those things within the police power. In the case of *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837, an act regulating the business of commission merchants was held to be valid, notwithstanding it exempted non-profit cooperative marketing associations, and although the act did not include the extensive fish industry of the state, marketed largely through commission merchants. In that case, reference was made to the case of *German Alliance Ins. Co. v. Superintendent of Insurance of State of Kansas,* 233 U. S. 389, in which it was said:

"A citation of cases is not necessary, nor for the general principle that a discrimination is valid if not arbitrary, and arbitrary in the legislative sense, that is, outside of that wide discretion which a legislature may exercise. A legislative classification may rest on narrow distinctions. Legislation is addressed to evils as they may appear, and even degrees of evil may determine its exercise."

In the case of *State v. Fraternal Knights & Ladies*, 35 Wash. 338, 77 Pac. 500, a law was sustained regulating new corporations and making them a class unto themselves. Upon quoting § 12, art. 1 of the constitution it was said:

"It is insisted that, inasmuch as the law of 1901 exempts corporations then existing and doing business from the operation of the rates named in the act, but applies them to corporations thereafter created or admitted to do business, there is for that reason an attempted discrimination which is violative of the above constitutional requirement. It will be observed, however, that all corporations thereafter created or admitted to do business are placed in a class to themselves, and no discrimination is made between any of the class, but the law is operative alike upon all corporations similarly situated."

There are a great many authorities upon this subject, but there is no occasion to review them. The law involved in this case, by its terms, operates alike on all osteopathic physicians and surgeons and, in our opinion, presents no just cause of complaint, so far as its validity is concerned, at the instance of the appellant.

We, of course, do not pass upon the facts in the case, but only upon the law challenged by the appellant as bearing upon the allegations of the complaint against him.

Affirmed.

MACKINTOSH, C. J., MAIN, FRENCH, and FULLERTON, JJ., concur.