MODERN SYSTEM DENTISTS, INC., and others, Appellants, vs. STATE BOARD OF DENTAL EXAMINERS, Respondent.

*September 13—October 9, 1934.*

For the appellants there was a brief by *Poss, Toelle & Schuler*, attorneys, and *Benjamin Poss* and *Joseph P. Brazy* of counsel, all of Milwaukee, and oral argument by *Joseph P. Brazy*.

For the respondent there was a brief by the *Attorney General, Herbert H. Naujoks* and *Warren H. Resh*, assistant attorneys general, and *Fred W. Armstrong* of Madison, and oral argument by *Mr. Naujoks*.

ROSENBERRY, C. J.   While the principal question raised by the plaintiffs relates to the power of the State Board of Dental Examiners of Wisconsin, hereinafter called the board, to prescribe certain rules and regulations, plaintiffs also claim that the limitation on advertising contained in sec. 152.06 (6) (c) and (d) is unreasonable and arbitrary and therefore unconstitutional.. The constitutionality of the act was argued in *Rust v. State Board of Dental Examiners, ante,* p. 127, 256 N. W. 919.   The *Rust Case* was disposed of upon other grounds.   The question of the validity of the law was not reached.   If the law is invalid because it offends the constitution, that question should be first disposed of because if the provisions complained of are invalid, the board is without authority to make the rules and regulations challenged here.

The power of the legislature of a state to enact laws similar to ch. 152 has been considered in a number of jurisdictions, the most recent case being that of *Semler v. Oregon*

*State Board of Dental Examiners,* 34 Pac. (2d) 311, citing with approval *Laughney v. Maybury,* 145 Wash. 146, 259 Pac. 17, 54 A. L. R. 393, to which is appended a note, Constitutionality of statute or ordinance prohibiting or regulating advertising by physician, surgeon, or other person professing healing arts, in which the cases are classified and collected.

We have no difficulty under the announced decisions of this court in reaching the conclusion that ch. 152 is a valid statute well within the constitutional power of the legislature. *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N. W. 929. We approve and adopt the reasoning of the Oregon court in the *Semler Case,* and no useful purpose would be served by a reconsideration of the cases there referred to. See also *In the Matter of Dr. Bloom Dentist, Inc., v. Cruise,* 259 N. Y. 358, 182 N. E. 16.

Plaintiffs rely upon the case of *Brown v. University of the State of New York,* 242 App. Div. 85, 273 N. Y. Supp. 809 (decided July 6, 1934, by the supreme court, appellate division, third judicial department). It is true that the decision is by the supreme court of the state of New York which is not a court of last resort, but the opinion nevertheless is entitled to respectful consideration. The power conferred there was to prohibit advertising that was "untrue, fraudulent, misleading or deceptive." The rule adopted by the New York dental board prohibited all advertising except by the use of a personal professional card of modest type announcing the name, title, address, telephone number, and office hours. Not only was the power delegated much more restricted than the power delegated to the board by ch. 152, but the courts of the state of New York have adopted a very much more stringent rule with respect to delegation of legislative power than the rule announced by this court.

In *Schumer v. Caplin,* 241 N. Y. 346, 150 N. E. 139; it was held that it was incompetent for the legislature of the

state of New York to delegate the power to make a rule which, when made, should have the force and effect of a statute. The rule in this state is quite different. See *State ex rel. Wisconsin Inspection Bureau v. Whitman, supra.*

The whole matter of the regulation of the practice of dentistry is an exercise of the police power, and if within the constitutional field, the power of the legislature is supreme. Certainly this law does not deprive the plaintiffs of property without due process of law. If their practices are such as in the judgment of the legislature they are detrimental to the health, morals, and welfare of the state, their activities may be restrained in the manner attempted by ch. 152.

We have given careful consideration to all the arguments urged against the validity of the act which we hold to be constitutional. If the act itself is valid, and the rules are made in the proper exercise of the granted power, the plaintiffs have no constitutional grounds for complaint. This conclusion follows from the cases cited.

The provisions of ch. 152, material to a determination of the remaining issues in this case, are as follows:

The organization of the board is provided for by sec. 152.01 (1) to (6). Sec. 152.01 (7) provides:

"(7) The board shall make such reasonable rules, by-laws and regulations as it may deem necessary for the proper and better guidance, government, discipline and regulations of the board and of licensed dentists and dental hygienists or persons acting as such pertaining to immoral or unprofessional conduct and unprofessional advertising as hereinafter defined in subsections (5) and (6) of section 152.06;" . . .

Sec. 152.06 (5) and (6), so far as advertising is concerned, provides:

"(5) 'Immoral or unprofessional conduct' means: Employing what is known as 'cappers' or 'streeters' to obtain business; or resorting to unprofessional advertising, as defined in subsection (6); obtaining fee by fraud or deceit;

. . . the advertisement of dental business or treatment of devices in which untruthful or impossible statements are made; . . .

"(6) 'Unprofessional advertising' as this term is used in subsection (5) shall include:

"(a) Any advertising statements of a character tending to deceive or mislead the public;

"(b) Advertising professional superiority or the performance of professional services in a superior manner;

"(c) Advertising definite, fixed prices when the nature of the professional service rendered and the materials required must be variable;

"(d) Advertising by means of large display, glaring, illuminated or flickering lights signs, or containing as a part thereof the representation of a tooth, teeth, bridge work or any portion of the human head;

"(e) Employing or making use of advertising solicitors or free publicity press agents;

"(f) Advertising either by sign or printed advertisement under the name of a corporation, company, association, parlor or trade name except that legally incorporated dental corporations existing and in operation prior to the effective date of this subsection, may continue so operating, while conforming to the provisions of this chapter. No corporation shall display any sign or advertisement concerning its work by the use of any name except its true corporate name and the names of the duly licensed dentists practicing in connection therewith. It shall not use any parlor or trade name in connection with such corporate name, or display any sign or advertisement, any parlor, trade or assumed name under which the business was formerly conducted, except its true corporate name."

The argument of the plaintiffs is that by implication the statutes permit frank and honest advertising as to which there is no limitation; that the only prohibition on such advertising is that it must not include fixed prices when the nature of the service rendered and materials furnished must be variable, the use of large display, glaring, illuminated, or flickering light signs, or the representation of a tooth, teeth,

or any portion of the human head as a part of the advertisement.

Pursuant to the power conferred upon it, the board adopted the rules challenged, being Rules 2, 5, and 6:

"Rule 2.   It is the opinion of the board that the following constitutes a violation of 152.06 (6) (a) which provides as unprofessional advertising 'Any advertising statements of a character tending to deceive or mislead the public.'

"(a)  The advertising of particular services or appliances at a price 'From —— Dollars up,' or wording to that effect.

"(b)  The omission of the names of any associate licensed dentists or dental hygienists in signs or advertisements.

. . . . .

"(d)  Signs of dentists used in any other place except on the premises of the building in which the office is located."

. . . . .

"Rule 5.   It is the opinion of the board that the nature of professional services rendered and materials required vary in each instant case, and that the advertising of any fixed price for any particular operation or work is in violation of 152.06 (6) (c), which provides 'Advertising definite, fixed prices when the nature of the professional services rendered and the materials required must be variable.' "

Rule 6, including the reason of the board for its adoption, is as follows: "Since professional men gain their business from their reputation rather than by drumming methods, we believe that the intention of the legislature exhibited in 152.06 (6) (c) is that we gain our practice from reputation in treating of human ills rather than from advertisements broadcasting our own praises.  To carry out this desire of the legislature to make our profession safer to the public we declare that any advertising by means other than a simple professional card of not more than ten (10) square inches, containing the name of the dentist or dentists followed by his degree or the word 'dentists,' his office address or addresses and business hours; or anything other than office signs placed on the windows and doors of the office or upon the outside of the office building of not more than six hundred (600) square inches in size over all, containing only the name or names of the dentist or dentists working therein together

with the word 'dentist' or the dentists' degree and office hours, with no letters over six (6) inches in size, be unprofessional advertising; provided, however, that a specialist, being one who devotes his entire time to a single branch of dentistry, shall be permitted to use words designating that specialty."

Plaintiffs argue that compliance with Rule 6 in effect prohibits all advertising including frank and honest advertising. A solution of the problems presented requires an analysis of the statute. The power of the board to make rules is contained in sec. 152.01 (7), which has already been set out. This section empowers the board to "make such reasonable rules . . . as it may deem necessary for the . . . guidance, government, discipline and regulations . . . of licensed dentists . . . or persons acting as such pertaining to . . . unprofessional advertising as . . . defined in subs. (5) and (6) of sec. 152.06."

So far as advertising is concerned, sec. 152.06 (5) declares that " 'immoral or unprofessional conduct' means . . . resorting to unprofessional advertising, as defined in sub. (6)." It is to be noted that sub. (6) declares that unprofessional advertising "shall include" certain specified things. If the legislature intended by sub. (6) to define what constituted unprofessional advertising, the use of the word "include" was perhaps unfortunate. The real question is— Shall the provisions of sub. (6) be considered definitive or merely a limitation upon the power of the board to define what constitutes professional and unprofessional advertising? In this connection it should be pointed out that the statute is peculiar. It nowhere either by express provision or by necessary implication provides that the rules made by the board shall have the force and effect of law. In that respect the power delegated differs very materially from the rule-making power conferred upon the public service commission, the industrial commission, the board of health, and other administrative bodies. Upon a careful consideration

of the whole statute, we are obliged to conclude that the provisions of sub. (6) are definitive, and not merely a limitation on the more general power granted by sub. (7) of sec. 152.01. Two provisions of the statute seem not only to support but to require this conclusion. The power of the board in sec. 152.01 (7) is to make rules in respect to "unprofessional advertising as hereinafter *defined* in subsections (5) and (6) of section 152.06."

Penalties for violation of the act are prescribed by sec. 152.08, which, so far as material here, is as follows:

"Any licensed dentist . . . who shall be guilty of 'unprofessional advertising' as *defined* in subsection (6) of section 152.06; shall upon . . . conviction," etc.

The power of the board to revoke the license of a dentist is conferred by sec. 152.06, which provides that such license may be revoked where the holder has (a) been guilty of immoral or unprofessional conduct. Immoral or unprofessional conduct includes unprofessional advertising, but does not include a violation of the rules made by the dental board, unless a violation of the rules is at the same time a violation of the statute. Violation of a rule which is not at the same time a violation of the statute affords no ground for the imposition of a penalty either by way of a fine or by revocation of the offender's license. Upon a consideration of the whole act it quite clearly appears that the legislature intended sub. (6) to be definitive. It is so construed.

The question then arises what if any power with respect to advertising is granted to the board by sub. (7) of sec. 152.01? A consideration of the provisions of sub. (6) of sec. 152.06 discloses that they are general in character. What advertising statements tend to deceive or mislead the public? When is a piece of advertising made by means of large display, by glaring, illuminated, or flickering lights? What size letter constitutes "display?" What is a large sign? What if any services rendered by a dentist is of such

a character that the services rendered and material required are not variable?—and other like matters. The board is empowered to further expand or amplify these provisions of sub. (6) under its power to find as a matter of fact what is and what is not within the terms of the statute, and to make rules accordingly in the language of the statute "for the proper and better guidance, government, discipline and regulation of licensed dentists," etc. The rules when made are subject to the test of reasonableness.

Regarding as we do sub. (6) of sec. 152.06 as definitive of unprofessional advertising, we are next called upon to consider whether or not the rules formulated are a proper exercise of the power granted. Adverting now to pars. (a) to (f), inclusive, of sec. 152.06 (6), we are unable to find in the definition of unprofessional advertising anything relating to the place where the advertisement may be placed. Considering par. (d), advertising by means of large display, glaring, illuminated, or flickering light signs, while the content of the sign is very much restricted, there is nothing respecting the place where the sign may be properly placed, whether upon an office door, wall, bill-board, or in a newspaper. In fact, if we consider the language of par. (f) "advertising either by sign or printed advertisement," etc., it seems to be a necessary implication that a printed advertisement is authorized if it in other respects conforms to the statute.

In the light of this construction of the statute we may consider Rule 2 to the effect that advertising particular services or appliances at a price from ——— dollars up would offend the statute because it tends to deceive or mislead the public. This is clearly within the power of the board as is Rule 4 (d) under par. (b). The inclusion of the names of associated licensed dentists in the advertisement is required by the express terms of par. (f) of sub. (6). On the other hand, subsection (d) of Rule 2, which provides that signs

shall not be used in any other place except on the premises of the building in which the office is located, is not within the power of the board.

A more difficult question is presented by Rule 5. The board determines or rules that the nature of professional services is such that all dental services rendered and materials required are variable. This is a matter of expert knowledge about which the members of the dental board are much better informed 'than any one outside of the profession could possibly be. It is quite probable most laymen would think, at least without giving the matter much consideration, that a lawyer who advertises that he would draw wills at $10 per will would be offering to perform service which was not variable. Any lawyer would know that it would be quite the contrary. A simple will might be drafted in half an hour while one involving the creation of trusts, creation of life estates, disposing of stocks in corporations, and the like, may require days in preparation. Some laymen might consider that extracting teeth at so much per tooth was a charge for service that was not variable, whereas one with experience knows that the service rendered is variable. So the determination of the board that all professional services rendered and materials furnished must be variable cannot be overthrown. It may be argued that from the language of the statute itself it follows as a necessary implication that there are some services and some materials which are not variable. That is a matter, however, upon which the legislature had no more information than other laymen had, and they quite clearly left it to the Board of Dental Examiners to determine that matter as a question of fact.

Rule 6, which defines a large advertisement as one containing more than six hundred square inches, which in one dimension would be a sign 20 x 30 inches, is held to be within the authority of the board. The board's determination that a sign larger than one containing six hundred

inches is a large sign must stand. In advertising parlance the word "display" refers to size of type (Webster). Under a contract for display advertising, a printer would not be called upon to set the advertising matter "solid." It is considered that the board has power to prescribe the maximum size of letters to be used. We do not find anything in sub. (6) which authorizes a rule respecting the matter on the signs which is otherwise in conformity with the requirements of sub. (6). One of the concerns has the following matter upon its sign:

> "TAKE CARE OF YOUR
> "TEETH.          "IT PAYS
> "LOW PRICES.          "IN THE END."
> "QUALITY WORK.
> "All Plates Made in Our Own
> "Laboratory—Quality
> "Materials Used.
> "Fillings, Extractions, Bridgework.
> "MODERN SYSTEM DENTISTS.
> "Southeast Corner Fifth and W. Wisconsin.
> "Broadway 9820.
> "Hours: 8:30 A.M.—8:30 P.M."

Purely educational matter such as "Take care of your teeth. It pays in the end" does not in our opinion conflict with the provisions of sub. (6) if it is in fact truthful. The words "Low prices," "Quality work," "All plates made in our own laboratory" and "Quality materials used" no doubt do conflict. It is considered that it is not within the province of the board to add to the restrictions imposed by statute. The power of the board is limited in that respect to a ruling as to what does and does not come within the statute and to amplifying and defining the terms used in the statute. The statute does not prohibit advertising which is purely educational if it conforms to the statute in other respects.

We have now considered all of the rules of which complaint is made. Neither this court nor the circuit court has

power to amend or change the rules. That is a power which rests in the Board of Dental Examiners. The plaintiffs are entitled therefore to have the rules complained of set aside, whereupon they will be subject to revision by the board in the light of this decision and further consideration of sub. (6). It follows that the complaint states a cause of action and the demurrer to the complaint should have been overruled.

*By the Court.*—The order appealed from is reversed, and cause remanded with directions to enter an order overruling the demurrer and for further proceedings according to law.