(No. 22528. No. 22649.

Fred N. Winberry *et al.* Appellants, *vs.* John J. Hallihan, Director of Registration and Education, *et al.* Appellees.—Russell A. Trovillion, doing business as New System Dentists, Appellee, *vs.* John J. Hallihan, Director of Registration and Education, *et al.* Appellants.

*Opinion filed June 14, 1935—Rehearing denied October 2, 1935.*

122

WOLF & LOVE, and DAVID BRANOWER, (STEPHEN LOVE, of counsel,) for appellants Fred N. Winberry *et al.*

MANUEL N. WISEMAN, and PHILIP G. LISTEMAN, for appellee Russell A. Trovillion.

OTTO KERNER, Attorney General, (HARRY EUGENE KELLY, and J. J. NEIGER, of counsel,) for the Director of Registration and Education, *et al.*, appellees and appellants.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Fred N. Winberry, a licensed dentist, filed a bill of complaint in the superior court of Cook county to restrain the Director of Registration and Education, the Attorney General, the State's attorney of Cook county and the commissioner of police of the city of Chicago from enforcing against him an act entitled, "An act to regulate the practice of dental surgery and dentistry in the State of Illinois, and to repeal certain acts therein named," as amended in 1933. The suit was also on behalf of other practicing dentists similarly situated. Leave was granted to New System Dentists, a domestic corporation, to file its intervening petition. It alleged that its business was operating a dental office in which it employed only licensed dentists. It sought the same relief Winberry prayed. Demurrers to the bill were sustained. Winberry amended his bill, and the demurrers were allowed to stand to the amended bill of complaint and to the intervening petition. The demurrers were again sustained and the complainant and the intervenor stood by their pleadings. The bill and petition were dismissed for want of equity. From that decree a joint direct appeal has been prosecuted to this court.

The trial court certified that the validity of a statute and the construction of the constitution are involved.

Meanwhile, Russell A. Trovillion, doing business under the firm name and style of New System Dentists, filed a similar bill in the city court of East St. Louis against the Director of Registration and Education, the Attorney General, the State's attorney of St. Clair county and the acting chief of police of the city of East St. Louis, seeking the same relief as prayed by Winberry. A temporary injunction was issued. The defendants made a motion to dissolve it and to dismiss the bill for the want of equity. The motion was overruled, the defendants elected to stand by their motion, and a decree was entered finding the amend-

(

ments to the Dental Practice act unconstitutional and a permanent injunction was granted. The defendants in that proceeding perfected their appeal. The causes have been consolidated for a hearing. Winberry, one of the appellants in No. 22528, and Trovillion, the appellee in No. 22649, will be hereinafter referred to as the complainants; New System Dentists, the other appellant in the former case, as the intervenor, and the appellees in that case and the appellants in the other, as the defendants.

The complainants contend that the Dental Practice act of 1933 deprives them of liberty and property without due process of law, in contravention of sections 2 and 14 of article 2 of the constitution of this State and the first section of the fourteenth amendment to the Federal constitution; that it is an unreasonable and improper exercise of the police power; that it unlawfully and improperly discriminates against dentists without imposing like restrictions upon physicians and surgeons, and constitutes class legislation; that it impairs and abridges their rights of contract, and that certain phrases and provisions are unintelligible and without any legal meaning. In particular, they assail the validity of the amended portions of sections 4, 7 and 18, all of sections 4a and 18a, and parts of section 18b.

The original Dental Practice act, approved June 11 and in force July 1, 1909, provided, among other things, for a board of examiners, consisting of five practicing dentists, to be designated the Illinois State Board of Dental Examiners. In 1917, by section 35 of the Civil Administrative Code, (Cahill's Stat. 1933, p. 661; Smith's Stat. 1933, pp. 2756-57;) this board was abolished and by section 58 its powers were transferred to the Department of Registration and Education. (Cahill's Stat. 1933, pp. 668-69; Smith's Stat. 1933, p. 2765.) The act in controversy became effective July 7, 1933. It is, "An act to amend sections 4, 5, 6, 7, 8, 16 and 18" of the act of 1909, and "to

add sections 4*a*, 18*a* and 18*b* thereto." (Laws of 1933, p. 708.) Section 4 as amended in 1933 (Cahill's Stat. 1933, p. 1814; Smith's Stat. 1933, p. 1849;) provides that every applicant for a dental license shall "pass an examination given by the board of dental examiners in the theory and practice of the science of dentistry."

Section 18, as amended, declares that it shall be unlawful for any person or persons to practice dentistry under the name of a corporation, company, association or trade name; to conduct, maintain, operate, own or provide a dental office in ·this State, either directly or indirectly, or by agents or employees; to operate, manage or be employed in any room, rooms or office where dental service is rendered or contracted for, under the name of a corporation, company, association or trade name.

By section 18*a* it is provided that no corporation shall practice dentistry or engage therein; hold itself out as being entitled to practice dentistry; furnish dental services or dentists; advertise under or assume the title of dentist or dental surgeon or equivalent title; furnish dental advice for any compensation; advertise or hold itself out, with any other person or alone, as having or owning a dental office or being able to furnish dental service, dentists or dental surgeons, or to solicit, through itself, its agents, officers, employees, directors or trustees, dental patronage for any dentist or dental surgeon employed by any corporation.

The provisions of section 18*b* which are specifically complained of and argued, are those which make it unlawful for any person, firm or corporation (1) to claim superiority over neighboring dental practitioners; (2) to advertise free dental services or examinations as an inducement to obtain dental patronage; (3) to advertise any amount as a price or fee for the services of any person engaged as principal or agent in the practice of dentistry, or for any materials whatsoever used or to be used; and (4) to employ "cappers" or "steerers" to obtain patronage,

or to use specimens of dental work, posters or any other *media* calling attention of the public to any person engaged in the practice of dentistry. It is further provided that any person licensed under the act may announce by the medium of a professional card if the card contains only the name, title, degree, office location, office hours, telephone number, and, if desired, also the residence address and telephone number; that if the licensee limits his practice to a specialty he may announce it; that the card, in either case, shall not be greater in size than three and one-half (3½) by two (2) inches, and that the same information may be inserted in public print when not more than one column in width and two (2) inches in depth; that a change of place of business, absence from or return to business may be announced in the same manner; that a licensed dentist may issue appointment cards to his patients when the information thereon is limited to matter pertaining to the time and place of appointment and that permitted on the professional card; that the name of the licensee may be displayed on the premises where he is engaged in the profession; provided, however, that the name and title of the registrant shall not be displayed in lettering larger than seven (7) inches. The last provision of this section is that nothing in the act shall prohibit any licensed dentist from publicly announcing, in periods of economic stress and depression, that his charge for dental services and examination has been reduced to conform with the reduced prices of commodities and services, but that no statement of the amount of such fees or prices shall be included. For the conviction of a first offense against the provisions of this section the act provides a fine of not less than $200 nor more than $500, and for each subsequent conviction a fine of not less than $500 nor more than $1000, or imprisonment in the county jail for not less than six months nor more than one year, or, in the discretion of the court, both a fine and imprisonment.

The constitutionality of section 18b is challenged on the ground that the provisions mentioned bear no real or substantial relation to the public health or the protection of the public against fraud, and that, therefore, they constitute an invalid exercise of the police power. The complainants refrain from assailing the validity of that portion of section 18b which expressly covers false and fraudulent advertising, so-called "painless dentistry," etc. The presumption is that a statute is constitutional, and it will be sustained if it was reasonably within the power of the legislature to enact it. (*People* v. *Exton,* 298 Ill. 119; *People* v. *Williams,* 298 id. 86; *Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 id. 167.) Unless the legislature has adopted that which it is clearly prohibited from enacting, and unless the conflict with the constitution is plain and obvious, the law will not be declared to be unconstitutional. The police power of the State in furtherance of the public health, safety, welfare and morals supersedes other laws and private rights. *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25; *City of Chicago* v. *Commerce Com.* 356 Ill. 501.

The question is presented whether the size, style and manner of dental advertising and advertising prices bear such a relation to the public health as to justify legislative control through the police power. That power has repeatedly been held to include detailed regulation of surgery, medicine and dentistry. (*Dent* v. *West Virginia,* 129 U. S. 114; *Hawker* v. *New York,* 170 id. 192; *Reetz* v. *Michigan,* 188 id. 505; *Douglas* v. *Noble,* 261 id. 165; *People* v. *Witte,* 315 Ill. 282; *People* v. *Walsh,* 346 id. 52.) The practice of professions has generally been held to be subject to licensing and to regulation under the police power. Professions are not subject to commercialization or exploitation. (*People* v. *Peoples Stock Yards Bank,* 344 Ill. 462; *Parker* v. *Dental Examiners,* 216 Cal. 285, 14 Pac. (2d) 67.) The argument that this legislation nullifies a right to pursue a trade or calling is unsound, because ap-

pellants have failed to distinguish between a trade and a profession. The advertising restrictions contained in this act bear a direct relation to public health and are well calculated to protect it. They are therefore within the legislative power to proscribe and prohibit.

In *Semler* v. *Oregon State Board of Dental Examiners,* 55 Sup. Ct. 570, the Supreme Court of the United States sustained an Oregon statute which prohibited advertising of professional superiority, performance of professional services in a superior manner, advertising of prices for such services, any advertising by large display, glaring, lighted signs, or advertising containing as a part thereof a tooth, teeth, bridgework or any portion of the human head, the employing of advertising solicitors or free publicity agents, advertising free dental work or free examinations, advertising to guarantee dental services or to perform dental operations painlessly. In that suit the plaintiff sought to enjoin the enforcement of the statute. He alleged it was repugnant to the due process and equal protection clauses of the fourteenth amendment and that it impaired the obligation of contracts, in violation of section 10 of article 1 of the United States constitution. The Oregon Supreme Court's decision was upheld and the act was declared valid. The State court had declared the policy of the act to be to prohibit fleecing the public through "baiting" advertising. The United States Supreme Court said in lending approval to that policy: "We do not doubt the authority of the State to estimate the baleful effects of such methods and to put a stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners but protection against those who

would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous. What is generally called the 'ethics' of the profession is but the consensus of expert opinion as to the necessity of such standards. It is no answer to say, as regards appellant's claim of right to advertise his 'professional superiority,' or his 'performance of professional services in a superior manner,' that he is telling the truth. In framing its policy the legislature was not bound to provide for determination of the relative proficiency of particular practitioners. The legislature was entitled to consider the general effects of the practices which it described, and if these effects were injurious in facilitating unwarranted and misleading claims, to counteract them by a general rule even though in particular instances there might be no actual deception or mis-statement." The same complaints, in substance, are made against the act *sub judice* as were made against the Oregon statute. Within limits which are reasonable, a dentist may notify the public of his location by signs on premises where he practices his profession. This legislation comes within the police power and is valid.

The New System Dentists charges that section 18*a* is invalid because it would deprive corporations actively engaged in operating dental offices of their property without due process of law. Like some other corporations, it has made substantial investments in leases, office equipment, electric signs, instruments, advertising and advertising contracts in reliance upon the Dental Practice act of 1909. It also insists that there is nothing detrimental to the public health in the corporate ownership of a dental office so long as all services are performed by licensed dentists. The law

is well settled that the State may deny to corporations the right to practice professions and may insist upon the personal obligation of individual practitioners. (*Semler* v. *Oregon State Board of Dental Examiners,* 55 Sup. Ct. 570; *People* v. *Peoples Stock Yards Bank,* 344 Ill. 462; *People* v. *Woodbury Dermatological Institute,* 192 N. Y. 454, 85 N. E. 697; *People* v. *Painless Parker Dentist,* 85 Colo. 304, 275 Pac. 928; *Parker* v. *Board of Dental Examiners,* 216 Cal. 285, 14 Pac. (2d) 67.) And this holding has been made regardless of the fact of existing contracts and investments made and entered into by corporations which were engaged in the practice of professions. The intervenor cannot complain of interference with its contracts if the legislative prohibition is not an unreasonable exercise of the protective power of the State. Its contracts and investment were necessarily made subject to that authority. *Semler* v. *Oregon State Board of Dental Examiners,* 55 Sup. Ct. 570; *Rast* v. *VanDeman & Lewis,* 240 U. S. 342, 363; *Union Dry Goods Co.* v. *Georgia Public Service Com.* 248 id. 372; *Sproles* v. *Binford,* 286 id. 374.

Similarly, there is no force in the contention that the act is discriminatory because it denies to corporations the right to operate a dental office where only licensed dentists are employed, and fails to prohibit corporations operating medical institutes and clinics, drug stores, optical and similar professional establishments. The legislature was not compelled to treat alike all those classes and was not bound to strike at all evils at the same time, in the same act or in the same way. It may deal with the different professions according to the needs of society in relation to each profession. There is no basis for the charge of an unconstitutional discrimination. *Semler* v. *Oregon State Board of Dental Examiners, supra.*

The complainants and the intervenor urge that section 7 as amended constitutes an improper delegation of legislative power to the Department of Registration and Educa-

tion with respect to the revocation or suspension of dental licenses as being too vague and indefinite; that section 4 as amended is void because it purports to vest certain powers in a non-existent body—the State Board of Dental Examiners; and that section 4a is invalid because it does not provide that the Director of Registration and Education shall be a dental specialist, who alone would be qualified to pass upon specialists. The pleadings disclose that no charges have been filed against the complainants under section 7 and apparently no effort has been made to revoke their licenses. In addition, the intervenor alleges that it has no license, and, in consequence, it does not have a license subject to revocation. Similarly, the provisions of section 4 as amended do not affect either the complainants, who have their licenses, or the intervenor, which cannot legally obtain one. Nor can they challenge the validity of section 4a, as it is not alleged that the complainants are specialists and since the intervenor is ineligible for a license as a specialist. To raise the constitutionality of a particular provision of a statute the complainants or the intervenor must be directly affected by the provision attacked. A decision on the validity of sections 7 and 4 as amended and section 4a would be mere dictum. Their consideration is, hence, unnecessary. *People* v. *Diekmann*, 285 Ill. 97; *People* v. *Huff*, 249 id. 164.

The decree of the superior court of Cook county is therefore affirmed. The decree of the city court of East St. Louis is reversed and the cause is remanded to that court, with directions to enter a decree in conformity with the view herein expressed.

*No. 22528—Decree affirmed.*
*No. 22649—Reversed and remanded, with directions.*