# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## A. H. Goe v. Chester B. Gifford, Et Al.

June 10, 1937.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*George E. Allen* and *Cliff R. Skinner*, for the appellant.

*Abram P. Staples, Attorney-General, Christian, Barton & Parker* and *W. W. Venable*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

The appellant is a duly licensed dentist who has been practicing his profession in the city of Richmond since November, 1930. It had been his custom to advertise extensively, through the newspapers, the prices, terms or fees charged for his professional services, free dental examinations of and guaranteed satisfactory dental work to all who seek his services. Such advertisements, from time to time, were illustrated with photographic cuts of teeth or bridge work.

In 1936 the General Assembly, by an act effective on June 18 of that year (Acts of Assembly 1936, ch. 82, p. 105), amended Code, section 1649, empowering the State Board of Dental Examiners to revoke or suspend the certificate and license of any licensed dentist for the following, among other, causes:

"Advertising to practice without causing pain or advertising professional superiority or the performance of professional services in a superior manner, or advertising prices, terms, or fees for professional services or advertising by means of large display, glaring light signs, or containing as a part thereof the representation of a tooth, teeth, bridge work or any portion of the human head, or employing or making use of advertising solicitors or free publicity press agents, or advertising any free dental work or free examination, or advertising to guarantee any dental service, or advertising to use any drug, nostrum, patent or proprietary drug or medi-

cine of an unknown formula, or advertising or publishing or circulating false claims or misleading statement of art, skill or knowledge, or advertising the methods of treatment or practice, or advertising in any other manner which tends to deceive or defraud the public."

Dr. Goe filed his bill of complaint in the court below seeking to enjoin Chester B. Gifford and others, members of the State Board of Dental Examiners, from the threatened revocation or suspension of his license for continuing the advertisements prohibited by the above terms of the act.

No question was raised as to the right of the General Assembly to prohibit the advertising of "false claims or misleading statements" or other matters which clearly tend to "deceive or defraud the public." But in so far as the act prohibits the advertising of prices, terms or fees for professional services, free examinations, or guaranteed dental services, it was attacked as unconstitutional and void on the grounds that:

"(a) It violates Article 1, Section 1 of the Virginia Bill of Rights.

"(b) It violates the due Process Clause of both the Federal and State Constitution in that it (1) constitutes class legislation because it applies alone to dentists and not to medical practitioners generally, and (2) because it provides for the trial of a so-called unethical dentist before a board composed exclusively of the so-called ethical dentists."

From a decree upholding the constitutionality of the act and dismissing the bill of complaint, this appeal has been taken.

■■ It is first argued that the act violates the Federal Constitution in that it amounts to an arbitrary interference with liberty and property, and thus violates the due process clause of the Fourteenth Amendment; that it is class legislation and repugnant to the equal protection clause of the Fourteenth Amendment; that it impairs the obligation of contract in violation of section 10, clause 1, article 1, of the Constitution.

The complete answer to this argument is found in the recent decision of the Supreme Court of the United States in *Semler* v. *Oregon State Board*, 294 U. S. 608, 55 S. Ct. 570, 571, 79

L. Ed. 1086, decided April 1, 1935. This case involved the constitutionality of a statute of the State of Oregon which prohibited the advertising, among other things, of the precise matters or statements here complained of. An examination of the record and briefs in that case discloses that the validity of that law was challenged on the identical grounds and argument here made.

In a unanimous opinion written by Mr. Chief Justice Hughes it was held that the statute was not repugnant to the Federal Constitution; that the restrictions therein found did not amount to arbitrary interference with the liberty and property guaranteed by the Federal Constitution, but was a reasonable exercise of the protective police power of the State, to which the contracts of the licensed dentist were necessarily subject; and that the statute was not discriminatory since the State had the power to "deal with the different professions according to the needs of the public in relation to each."

The opinion concludes with this language which, we think, conclusively disposes of the appellant's claim here (294 U. S. 608, at p. 612, 55 S. Ct. 570, 572, 79 L. Ed. 1086):

"We do not doubt the authority of the State to estimate the baleful effects of such methods and to put a stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous. What is generally called the 'ethics' of the profession is but. the consensus of expert opinion as to the necessity of such standards.

"It is no answer to say, as regards appellant's claim of right to advertise his 'professional superiority' or his 'performance of professional services in a superior manner,' that he is telling the truth. In framing its policy the legislature was not bound to provide for determinations of the relative proficiency of particular practitioners. The legislature was entitled to consider the general effects of the practices which it described, and if these effects were injurious in facilitating unwarranted and misleading claims, to counteract them by a general rule even though in particular instances there might be no actual deception or misstatement."

The appellant next contends that the statute is invalid because it violates the Bill of Rights (section 1) and the due process clause (section 11) of the Constitution of Virginia.

Undoubtedly the liberty guaranteed by the Bill of Rights (Const. art. 1, sec. 1) embraces "the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purpose above mentioned." *Young* v. *Commonwealth*, 101 Va. 853, 863, 45 S. E. 327, 328.

In that case this court held unconstitutional a statute prohibiting the use of trading stamps. There we dealt with "traders in commodities," and not with "the vital interests of public health," to borrow the terms used by Chief Justice Hughes in *Semler* v. *Oregon State Board* (U. S.), *supra*, a distinction which the Virginia court clearly recognized in its opinion.

Furthermore, we should remember that section 159 of the Virginia Constitution provides that "the exercise of the police power of the State shall never be abridged, * * *."

Consequently restrictions placed upon the use of property—such as building restrictions and zoning laws—are upheld upon the principle that "The legislature may, in the exercise of the police power, restrict personal and property rights in the interest of public health, public safety, and for the promo-

tion of the general welfare." *Gorieb* v. *Fox*, 145 Va. 554, 560, 134 S. E. 914, 916, affirmed 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210.

And it is equally well settled that the State through the exercise of its police power may enact such laws regulating the practice of those professions dealing with the health of individuals—such as medicine, surgery and dentistry—as the legislature in its wisdom may deem expedient, so long as such legislation is reasonable and appropriate to accomplish the legitimate purpose of safeguarding the public health. *Semler* v. *Oregon State Board* (U. S.), *supra*, and cases there cited; *Winberry* v. *Hallihan*, 361 Ill. 121, 197 N. E. 552, 555; *Craven* v. *Bierring* (Iowa), 269 N. W. 801, 808; *Modern System Dentists, Inc.* v. *State Board of Dental Examiners*, 216 Wis. 190, 256 N. W. 922, 923; *Dr. Bloom Dentist, Inc.* v. *Cruise*, 259 N. Y. 358, 182 N. E. 16, 17.

Therefore, the real question for determination here is whether this statute is a reasonable and valid exercise of the police power, or whether it is so arbitrary and unreasonable as to interfere with the appellant's inherent right to carry on a lawful vocation.

Appellant does not question the right of the State under its police power to reasonably regulate the practice of dentistry, but he strenuously contends that such legislation must bear a fair relation to the public health, morals, safety, or welfare of the people, and that so long as there is nothing untruthful in the advertising matter, the public welfare is not adversely affected thereby.

But we should remember that the exercise of police power is not limited to the prohibition of acts which are *malum in se*, and the legislature may pass laws intended to prevent fraud even though the act prohibited is itself harmless. *Semler* v. *Oregon State Board* (U. S.), *supra; Otis* v. *Parker*, 187 U. S. 606, 609, 23 S. Ct. 168, 47 L. Ed. 323; *Merrick* v. *N. W. Halsey & Co.*, 242 U. S. 568, 588, 37 S. Ct. 227, 61 L. Ed. 498; *Sweat* v. *Commonwealth*, 152 Va. 1041, 1055, 148 S. E. 774; *Reaves Warehouse Corp.* v. *Commonwealth*, 141 Va. 194, 204, 126 S. E. 87; *Semler* v. *Oregon State Board*, 148 Ore. 50, 34 P. (2d) 311, 314.

In recent years laws of the character here attacked, regulating the practice of dentistry, have been passed by a majority of the States. Thirty States prohibit the advertising of prices, twenty-eight prohibit the advertising of display signs carrying cuts or illustrations of teeth, twenty-one prohibit the advertising of free dental services, and nineteen outlaw the advertising of guaranteed dental work.

In numerous instances the constitutionality of these laws has been attacked on the same grounds here advanced, and in the great majority of cases the statutes have been upheld. Some of the more recent decisions are: *Laughney* v. *Maybury* (1927), 145 Wash. 146, 259 P. 17, 54 A. L. R. 393; *Semler* v. *Oregon State Board* (1934), 148 Ore. 50, 34 P. (2d) 311, affirmed 294 U. S. 608, 55 S. Ct. 570, 572, 79 L. Ed. 1086; *Modern System Dentists, Inc.* v. *State Board* (1934), 216 Wis. 190, 256 N. W. 922; *Winberry* v. *Hallihan* (1935), 361 Ill. 121, 197 N. E. 552; *Craven* v. *Bierring* (Iowa 1936), 269 N. W. 801.

With one accord these decisions point out that while the advertising of prices, terms, and display of teeth, etc., may not be harmful in itself, statutes of this character are aimed at the unscrupulous practitioner and the quack, who usually resorts to such "high-powered salesmanship" methods to lure the ignorant and unsuspecting public to his offices; that it is for the legislature and not the courts to say whether or not it is necessary, in order to close the door to such an unscrupulous practitioner, and to prevent the perpetration of fraud and deception upon his patients, that all advertising except as permitted in the statute be prohibited.

With this reasoning we are in thorough accord.

It is a matter of common knowledge that many laws intended to protect the public put restraints upon the acts and conduct of men of honest motives and purposes. Pure food laws and "blue sky laws," for instance, in order to prevent fraud and deception, prohibit the doing of acts harmless in themselves.

If the present statute burdens an honest business, as the appellant claims that it does in his case, the answer is that it burdens it "only that under its forms dishonest business

may not be done." *Sweat* v. *Commonwealth*, 152 Va. 1041, 1055, 148 S. E. 774, 778.

The statute here does not destroy the appellant's right to practice his profession. It simply requires him, and every other dentist in the State, to conform to the ethics of the profession. "What is generally called the 'ethics' of the profession is but the consensus of expert opinion as to the necessity of such standards." *Semler* v. *Oregon State Board* (U. S.), *supra*.

Considering the evils sought to be remedied we can not say that the limitations of the statute are arbitrary or unreasonable.

Neither do we find any merit in the contention of the appellant that this statute is class legislation because it applies alone to dentists and not to medical practitioners generally. As was said in *Semler* v. *Oregon State Board* (U. S.), *supra:* "The State was not bound to deal alike with all these classes, or to strike at all evils at the same time or in the same way. It could deal with the different professions according to the needs of the public in relation to each." See also, *Semler* v. *Oregon State Board* (Ore.), *supra; Craven* v. *Bierring, supra; Laughney* v. *Maybury, supra.*

There is no merit in the final contention of the appellant that the statute violates the due process clause of the Virginia Constitution "because it provides for the trial of a so-called unethical dentist before a board composed exclusively of the so-called ethical dentists."

Here the argument is that, in a proceeding to revoke or suspend appellant's license, the State Board of Dental Examiners is not a fair and impartial tribunal because it favors the enforcement of the statute as written by the General Assembly.

In the first place, the mere statement of this proposition shows it to be unsound. How can it be said that the willingness of a tribunal to enforce the law as written renders it incompetent to conduct a trial? It might as well be argued that a judge of any court is incompetent to try a case because he favors the enforcement of the law as written.

Furthermore, the action of the Virginia State Board of Dental Examiners in revoking or suspending a license is not final. Code, section 1650, as amended by the Acts of 1936, ch. 83, p. 106, gives the accused an appeal as a matter of right from the action of the board "to the circuit court of the county or the corporation court of the city in which the offense charged originated, where the matter shall be heard *de novo,*" and from an adverse judgment of the latter court the accused may appeal to the Supreme Court of Appeals. He is thus assured every safeguard possible under the law. *Craven* v. *Bierring, supra.*

Our conclusion is that the decree of the lower court is plainly right and should be

*Affirmed.*