BENNETT *v.* INDIANA STATE BOARD OF REGISTRATION AND EXAMINATION IN OPTOMETRY ET AL.

[No. 26,742. Filed April 29, 1937.]

679

*Noel, Hickam, Boyd & Armstrong,* for appellant.

*Omer S. Jackson,* Attorney-General, *Ralph E. Hanna,* Assistant Attorney-General, *Wilbur F. Pell* and *Dailey, O'Neal, Dailey & Efroymson,* for appellees.

TREMAIN, C. J.—One Soland began this action by filing his complaint in the Superior Court of Marion County against the Indiana State Board of Registration and Examination in Optometry, the appellee members thereof, and the Attorney General of Indiana. The complaint sought a declaratory judgment, and an injunction to prevent the enforcement of certain sections of Chapter 38 of the Acts of 1935 of the General Assembly of the State of Indiana, alleged to be unconstitutional and invalid. While that complaint was pending, the appellant Bennett filed an intervening petition, after

the filing of which the original complaint by Soland was dismissed. For the purposes of this opinion the intervening petition will be treated as the complaint.

The nature of the action and the issues are stated by the appellant in his brief in the following language:

"It (complaint) alleges that the appellant is and for some time last past, has been engaged in the practice of optometry in the City of Hammond, Indiana, and has been and is now duly licensed so to do under the provisions of the laws of the State of Indiana with reference thereto and is employed to render optometrical services for a firm none of the members of which reside in Indiana or is licensed to practice optometry in Indiana. . . .

"That the employers of appellant and numerous other persons, firms and corporations, are engaged in the sale of eyeglasses, spectacles, lenses, frame mountings and other prosthetic materials in addition to employing licensed optometrists for the purpose of rendering optometric services to the public. That there are numerous other persons throughout the State of Indiana employed to render optometrical services who are in the same situation as appellant. That in connection with the sale of said articles, said persons, firms and corporations advertise and claim the right to advertise the sale of said articles and the prices and terms upon which they are to be sold so long as said advertising is not fraudulent or deceptive or has no tendency to deceive the public.

"That said persons, firms and corporations further claim the right to furnish through appellant and other licensed optometrists, optometrical services to the public in connection with their business of selling glasses. That they further contend that the right to sell and advertise their merchandise is a lawful property right and appellant contends that the right to render such services as a licensed optometrist in the employ of said persons, firms or corporations is a lawful property right.

"The petition further alleges that a controversy exists between appellant and appellees with reference to the validity of Section 1 (e), 10, 11 (e), 11 (g), 12 (d) and 12 (f) of Chapter 38 of the Acts of 1935 known as the Optometry Law, it being the claim of

appellant that each and all of such sections are invalid for the reason that they are in violation of certain enumerated provisions of the Constitution of the United States and the Constitution of the State of Indiana. The intervening petition prays for a declaratory judgment as to the validity of said provisions, prays that said sections be declared unconstitutional, null and void, and further prays that appellees be perpetually enjoined from attempting to enforce any of said provisions.

"The appellee James H. Hammon filed an intervening petition as an optometrist, asserting the validity of all of said provisions and praying that the appellee Board be mandated to enforce the same.

"Appellant filed an answer to said intervening petition of appellee Hammon, reaffirming the invalidity of said provisions and again asking a declaratory judgment as to the invalidity of said sections of the law and praying an injunction against enforcement thereof. Appellees filed answer in general denial to the intervening petition.

"The cause was submitted for trial by the court without intervention of a jury on the issues so joined. And on April 25, 1936, judgment was rendered against appellant upholding the validity of the various provisions of said Act and denying the injunction asked for. Judgment was also rendered in favor of the appellee James H. Hammon on his intervening petition upholding the validity of said portions of the act and mandating the appellee Board members and the appellee Attorney General of Indiana to carry out the provisions of said Act. Appellant duly filed his motion for a new trial on May 8, 1936, within the time allowed by law."

Chapter 38 of the Acts of 1935 (§13169 et seq. Baldwin's Supp. 1935) repealed certain statutes regulating the practice of optometry and is in itself a new and complete act upon that subject. It provides for a State Board of Optometry to be appointed by the governor, the licensing of those engaged in that business or profession, the promulgation of rules and regulations by the board, renewal and revocation of licenses, hearings

to be had upon charges filed against a licensed optometrist; and defines certain acts as constituting unprofessional conduct, the practice of which would subject the licensee to a revocation of his license.

Under propositions and authorities, the sections of the statute attacked by the appellant as being unconstitutional are sections 1(e), 11(e), 11(g), and 12(f), and read as follows:

Section 1(e) (Pertaining to the power of the Board.)

"To determine what acts on the part of any person licensed under this act, shall constitute unprofessional conduct as defined by this law."

(The following sections define unprofessional conduct.)

Section 11(e)

"For any person to publish, directly or indirectly, or to circulate any fraudulent, false or misleading statements as to the skill or method of practice of any person or of any optometrist, or to advertise in any manner that will tend to deceive, mislead or defraud the public; or to claim professional superiority, or to advertise directly or indirectly, free optometrical services or examinations, as an inducement to the public to procure optometrical services; or to advertise directly or indirectly any amount as a fee for the professional services or to advertise any definite amount and/or terms for prosthetic devices, material or materials constituting all or part thereof which may be furnished and supplied to the public."

Section 11(g)

"The direct or indirect acceptance of employment to practice optometry from any person other than one who possesses a valid unrevoked certificate of registration as an optometrist in and for the State of Indiana and who has an actual legal residence within the state."

Section 12(f)

"For any person or persons to publish or circulate, or print or cause to be printed, by any means

whatsoever, any advertisement which quotes prices on glasses, lenses or frames or quotes a discount to be offered to the public for the professional services and/or the prosthetic devices, eyeglasses, lenses or frames, to be furnished to the public, or which quotes 'moderate prices,' 'low prices,' 'lowest prices,' 'guaranteed glasses,' 'satisfaction guaranteed,' or words of similar import, or, which advertises any eyeglasses, spectacles, lenses, frames, mountings, or other accessories or prosthetic devices without specifying the kind, type and quality of the same; or which includes in said advertisement the words 'eye examination free,' 'consultation free,' 'free eyesight test,' 'free sight test,' 'examination without the use of harmful drops or drugs,' or any other words equivalent thereto."

The appellant asserts that each of said sections of the statute is violative of the Fourteenth Amendment of the Constitution of the United States by reason of the fact that the appellant is denied the equal protection of the law, and that his property is taken without due process of law.

As to section 1(e), in addition to the alleged violation of the Fourteenth Amendment of the Federal Constitution, it is charged that it unlawfully delegates power to the appellee board in violation of Article 4, Section 1, and Article 1, Section 23, of the Constitution of the State of Indiana.

The questions presented by appellant are so closely related that they may be considered together. Appellant first attacks section 11(g). His position is that since he is prohibited from accepting employment from any person other than one who resides within the state and holds a valid, unrevoked certificate of registration as an optometrist, he is deprived of a property right guaranteed by the Constitution. He contends that even if his employer is a non-resident and not licensed in this state, nevertheless, he, as regularly and duly licensed optometrist, cannot be deprived of the right to

follow his profession within the state; that such right is a property right; that the fact that his employer is a non-resident bears no relation to the protection of the public health or the general welfare and safety of the citizens of the state; that optometry is not a learned profession in the category with law and medicine, but is an occupation requiring mechanical skill and technique.

The authority of the legislature to regulate the practice of medicine and surgery in this state has been upheld by the court many times. In *Eastman* v. *State* (1887), 109 Ind. 278, 10 N. E. 97, the appellant challenged the right of the legislature to enact a law regulating such practice, but the court held that under the police power of the state, the legislature possessed full power and authority to enact regulatory measures to control the practice of medicine in order to prevent all things harmful to the comfort, safety, and welfare of the citizens of the state. Judge Elliott, in that case, made use of the following language (p. 297):

> "The practice of medicine and surgery is a vocation that very nearly concerns the comfort, health and life of every person in the land. . . . For centuries the law has required physicians to possess and exercise skill and learning, for it has mulcted in damages those who pretend to be physicians and surgeons, but have neither learning nor skill. It is, therefore, no new principle of law that is asserted by our statute; but, if it were, it would not condemn the statute, for the statute is an exercise of the police power inherent in the State."

This case was followed by *State ex rel. Burroughs* v. *Webster et al.* (1898), 150 Ind. 607, 50 N. E. 750, which questioned the validity of the Act of 1897, providing the manner in which physicians holding a license to practice medicine under that law were required to procure a new license to continue the practice. It created a State Board of Medical Registration and Examination

and provided methods and means of examination and issuance of licenses. The law was attacked upon the ground that it violated the relator's constitutional right to pursue his occupation or profession without molestation; that the law was out of harmony with free institutions, according to which each citizen may pursue his work, studies, and occupation, so long as he does not trespass upon the equal rights of his fellows and the welfare of the community in which he lives. The court said (p. 615) :

> "These are, however, questions for the legislature; and, so long as the act is not clearly in violation of any provision of the constitution, it cannot be held invalid. The legislature has judged that the safety of the public health requires the guards that are placed around the practice of medicine by this law; and, notwithstanding the questions made by counsel, we are unable to see that the act is not a valid exercise of the police power of the State."

To sustain the court, a long list of authorities is cited, including decisions from many state and Federal courts.

Other authorities are cited sustaining statutes regulating the practice of dentistry and the practice of pharmacy, and still others are cited which hold that the state may regulate the trade of plumbing, engineering, and the practice of law. This state has long recognized the right of the legislature to provide for examinations of educational fitness of persons engaging in the professions, and in business requiring mechanical skill.

More than twenty years ago the legislature of the State of California enacted a law requiring the registration and examination of persons engaging in the practice of optometry. The validity of the Act was questioned and finally came before the Supreme Court of the United States in the case of *McNaughton* v. *Johnson* (1917), 242 U. S. 344, 37 S. Ct. R. 178, 61 Law Ed. 352. Mc-

Naughton was a graduate of a school of optometry and had practiced her profession in that state for three years at the time the act became effective. That act prevented her from continuing the practice of optometry without first obtaining a certificate of registration from the State Board of Optometry. She filed a suit against the Board and the Governor of the state to enjoin them from the enforcement of that statute, and charged that it offended the Fourteenth Amendment of the Constitution of the United States, deprived her of her property without due process of law, denied her the equal protection of the law, and finally contended generally that her occupation, being a lawful one, not hurtful to the individual or dangerous to the community, the state had no power to impose discriminatory regulations upon her. In that particular case, the appellant contended that a discrimination was shown, since it permitted licensed physicians and surgeons to practice optometry, but forbade her so to do without license. In answer to her charge and to sustain the statute, the appellees invoked the police power of the state. In holding that statute valid, the Supreme Court pointed out that it is well established that a state may regulate the practice of medicine, using this word in its most general sense. Decisions of the United States Supreme Court are cited upon that proposition, and the court reasons that since the state has full authority to regulate the practice of medicine by a physician, it is not a violation of any constitutional provision to require those engaging in the practice of optometry to pass an examination and receive a certificate from the state. The statute was held not to be discriminatory, or violative of the Fourteenth Amendment.

The relation of an optometrist to his patient is much the same as that of a physican and patient. The prac-

tice of optometry, as the practice of medicine, directly affects public health and is a proper subject for legislative regulation and control. The relationship with the patient is personal. Notwithstanding this relationship, the appellant takes the position that the fact that the practitioner, duly licensed by the state, is employed by an unlicensed employer can bear no relation to public health. The relationship between the licensed optometrist and his unlicensed employer is that of master and servant. The master is in a position where he may dictate to his servant the manner of conducting his business, the kind and nature of the goods to be sold and furnished to the patient, in order to procure the most favorable financial gain to the employer. And this may be done without regard to the public health, since the employer is a nonresident and beyond the jurisdiction of the courts of this state, and is not licensed.

The statute defines unprofessional conduct and enumerates specific acts which constitute unprofessional conduct, one of which is the acceptance of employment from a non-resident who does not hold a certificate of registration. Section 1(e) gives the State Board authority to determine what shall constitute unprofessional conduct, *as defined* by the statute. This court has recognized the validity of statutes authorizing administrative boards to promulgate rules and regulations in the administration of regulatory statutes. Authorities upon that subject are so numerous that citation is unnecessary.

It cannot be expected of the legislature that it should forbid specifically all improper practices likely to arise. Of necessity, details of its plan must be left to the board. The statute fixes the standard upon which the board may act. It does not vest the board with power beyond its scope and purpose. It will not be assumed that the

legislature delegated or intended to delegate to the State Board authority to declare conduct to be unprofessional, except as defined, and within the scope of the statute. The practice of optometry bears a close relationship to the health and welfare of mankind. The eye is a delicate organ closely connected with intellectual, nervous, and physical functions. This fact brings the practice of optometry within the scope of legislative supervision through the exercise of the police power. The principal purpose of the statute is to give protection to the public from quacks, and persons' or firms not licensed, but who, as non-resident manufacturers of eyeglasses, etc., employ licensed optometrists to conduct the manufacturer's business in this state for profit. Section 11(g) prohibits such employment. It is not for the court to say that the legislature was without authority to enact a law condemning that relationship and practice.

Section 11(e) and 12(f) forbid the acts therein specified. The purport of these provisions is to prevent certain advertisements and publications likely to mislead and deceive the public. The appellant admitted upon the witness stand that the publications exhibited to him were distributed by handbills and through the medium of the press, and contained formulas, tests, and statements prohibited by the statute. These advertisements were furnished and paid for by the unlicensed, non-resident manufacturers.

If the sections of the statute herein set out, when read in connection with the entire statute, are invalid, then this court has been wrong in numerous decisions upholding the validity of statutes affecting and regulating the practice of other learned professions, and businesses requiring mechanical skill. A license to practice optometry, to a certain degree, may vest in the holder a property right, but it is not such a

contract right as will enable him to defeat the purpose of an act of the legislature, enacted under authority of the police power of the state, for the protection of health and general welfare. It matters little whether the practice of optometry is to be regarded and classified as a learned profession or an occupation requiring mechanical skill. In either event, this court generally has recognized the power vested in the legislature to enact laws providing for licensing and regulating the learned professions as well as mechanical. The law is in harmony with our free institutions and the progress of the age. In the pursuit of his profession or occupation, each individual must have regard for the equal rights of his neighbors and the welfare of the community in which he lives.

While the statute regulating the practice of optometry has not heretofore been before this court, it has been before the courts of other jurisdictions. Many statutes, similar to the Indiana statute as to its regulatory provisions, have been upheld almost without dissent. That such statutes are held to be a proper exercise of the police power for the purpose of safeguarding public health and do not amount to the taking of property without due process of law or the denial of the equal protection of the law, has been asserted by the courts many times. For an exhaustive survey of the decisions upon this question see the annotation in 98 A. L. R. 905. This annotation follows *Sage-Allen Co.* v. *Wheeler* (1935), 119 Conn. 667, 179 Atl. 195, beginning at page 897.

Upon the question of the right of a corporation or an individual, not himself licensed, to practice optometry through a licensed employee, see the annotation in 102 A. L. R. 343, which follows *State ex rel. Beck* v. *Goldman Jewelry Co.* (1935), 142 Kan. 881, 51 Pac. (2d) 995. It is deemed unnecessary to cite and quote specifically

from the numerous authorities collected in these annotations.

The legislature has not entered a new and untried field of legislation in providing safeguards for the protection of the public by the enactment of Chapter 38. This was a question entirely for the legislature, and so long as the Act is not clearly in violation of any provision of the Constitution, it cannot be held invalid. The legislature has declared that the safety of the public and the health of the community require the safeguards. that are placed around the practice of optometry. This court is unable to say that the Act, as a whole, is not a valid exercise of the police power of the state.

Therefore, the judgment of the lower court is affirmed.