(No. 32141.—

ROBERT KLEIN, Appellee, *vs.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Appellants.

*Opinion filed March 20, 1952—Rehearing denied May 19, 1952.*

Ivan A. Elliott, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, of counsel,) for appellants.

MAYER GOLDBERG, and HAROLD GINSBURG, both of Chicago, (JOSEPH MINSKY, of counsel,) for appellee.

GEORGE E. DRACH, of Springfield, and WILLIAM J. LYNCH, of Chicago, *amici curiae.*

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

Appellee, Robert Klein, a duly qualified, registered and practicing optometrist, instituted this action in the superior court of Cook County against the Department of Education and Registration of the State of Illinois and its Director, Noble J. Puffer, the appellants, seeking by such proceeding to enjoin appellants from enforcing certain provisions of the Illinois Optometric Practice Act approved June 15, 1951, (Ill. Rev. Stat. 1951, chap. 91, pars. 105.1 to 105.29 incl.,) which appellee claims are constitutionally insufficient. Appellants filed a motion in the nature of a demurrer to the bill and, upon the pleadings made, the trial court entered a decree granting the injunctive relief prayed and finding the act to be susceptible to the constitutional objections raised. Appellants have perfected a direct appeal to this court and their efforts here are supplemented by a brief filed by the Illinois Optometric Association on leave granted to file as *amicus curiae.*

The object and purpose of the Illinois Optometric Practice Act of 1951 is stated in section 2 as follows: "The practice of optometry in the State of Illinois is declared to affect the public health, safety and welfare and is subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the practice of optometry, as defined in this Act, merit and receive the confidence of the public and that only qualified persons be permitted to practice optometry in the State of Illinois. This act shall be liberally construed to carry out these objects and purposes." The practice of optometry

is defined in the section that follows (sec. 3) in this manner: "The practice of optometry is defined to be the employment of objective or subjective means, or both, for the examination of the human eye and its appendages, without the use of drugs, medicine, or surgery, for the purpose of ascertaining any departure from the normal, measuring its powers of vision, and adapting lenses or prisms, ocular exercises, visual training, or any other method other than the use of drugs, medicine or surgery, for the aid thereof." From the language of section 3, it will be seen the function sought to be regulated is to be distinguished from that of the ophthalmologist, a doctor of medicine who specializes in treating diseases of the eye, in eye surgery and who is permitted to use drugs or medicines in making eye examinations, and from that of the optician who is the skilled craftsman or artisan who grinds and processes lenses.

Both parties are agreed that the practice of optometry is related to the public health and welfare and therefore subject to regulation under the police power of the State. Such a conclusion is amply supported by the decisions of this and other jurisdictions.

An inherent feature of our form of government is that every citizen has the inalienable right to engage in any legitimate trade, occupation, business or profession which he sees fit. His labor is his property and is bulwarked by the full and equal protection of the law afforded by the due process clause of the Federal constitution. It is also embraced within the constitutional provision which guarantees to everyone liberty and the pursuit of happiness. (*Allgeyer* v. *Louisiana,* 165 U.S. 578, 41 L. ed. 832.) The right to pursue a trade or calling is, however, subordinate to the right of the State to limit such freedom of action where the public health, safety or welfare may require. (*People ex rel. Barrett* v. *Thillens,* 400 Ill. 224; *Nebbia* v. *New York,* 291 U.S. 502, 78 L. ed. 940.) In instances where the police power is invoked to regulate and super-

vise a legitimate occupation, the restraint imposed must be reasonable. The legislative determination that regulations are needful is not conclusive and is always subject to review. In order for such regulations to be lawfully imposed upon the constitutional rights of the individual to pursue his trade, profession or business, the act passed under the guise of a measure to protect the public health, safety and welfare must have a definite relation to the ends sought to be attained. *Banghart* v. *Walsh,* 339 Ill. 132; *Ritchie* v. *People,* 155 Ill. 98.

In the present case it is appellee's contention that the present act is an extreme regulation which exceeds the limits permissible under a proper exercise of the police power and that certain of the regulations of which he complains have no definite relation to the ends sought to be attained. Appellants, for their part, insist that the regulations complained of have a definite relation to the public health and welfare and that they constitute a valid exercise of the police power. In further seeking to justify or condemn the act, a controversy between the parties has arisen in the briefs filed in this court as to whether the statute and judicial precedent have raised optometry to the plane of a learned profession, which were traditionally law, medicine and theology, thus subjecting it to a higher ethical code and a more rigid exercise of the police power. (See: *People ex rel. Illinois State Bar Assn.* v. *Peoples Stock Yards Bank,* 344 Ill. 462; *People* v. *United Medical Service, Inc.,* 362 Ill. 442; *Dr. Allison, Dentist, Inc.* v. *Allison,* 360 Ill. 638.) We do not find that such an issue is raised by the pleadings in this case, or that a determination of the question is necessary in resolving the issues that are presented. In the light of the appellee's agreement to the legislature's statement of public policy that "the practice of optometry in the State of Illinois is declared to affect the public health, safety and welfare," our inquiry into the validity of the sections complained of may be limited,

for the most part, to a determination of whether they have a definite relation to the ends sought to be attained.

Section 11 of the Illinois Optometric Practice Act makes the following provision: "Every holder of a certificate of registration under this Act shall display such certificate in a conspicuous place in the office or offices wherein such holder practices optometry, but not in such manner that such certificate may be seen from outside such office or offices; and every such holder shall, whenever requested, exhibit such certificate to any representative of the Department, and shall notify the Department of the address or addresses and of every change thereof, where such holder shall practice optometry.

"Every registered optometrist shall keep a record of examinations made and prescriptions issued, which record shall include the names of persons examined and for whom prescriptions were prepared, and shall be signed by the registered optometrist and retained by him in the office in which such professional service was rendered. Such records shall be preserved by the registered optometrist for a period of three years from the date on which such professional service was rendered."

Appellee contends that the foregoing provision is discriminatory, arbitrary and unreasonable, has no relation to public health, safety and welfare, and that it deprives him of his property in derogation of the rights guaranteed him by the due process clauses of the State and Federal constitutions. Further, he asserts that the section is a violation of section 22 of article IV of the Illinois constitution which prohibits special legislation.

Specifically, appellee complains of the section insofar as it requires him to keep records of his examinations and prescriptions for three years, and of the language which states that his certificate of registration may not be displayed in such a manner as to be seen from outside his office. It is our belief that the legislative enactment re-

quiring the preservation of records for a period of three years, has a definite relation to the public health and welfare and constitutes a valid exercise of the police power.

It is common knowledge that the eye continues to vary from normal even when spectacles are worn and that in some instances the spectacles may have the corrective effect of causing the eye to return to normal. In either case, periodic examinations result and reference to previous treatment and prescription would insure more comprehensive and intelligent treatment. Appellee recognizes the need for preserving the record of prescriptions but asserts that the burden should be borne by the optician. The legislature has determined the need for such records and we cannot say that it is unreasonable to place the duty at the source of such records, *viz.,* in the offices of the optometrists. That similar demands with regard to keeping of records have not been made by statute upon those who practice medicine and dentistry can be of no aid to appellee, for a law is not local or special in a constitutional sense if it operates in the same manner on all persons in like circumstances. (*Lasdon* v. *Hallihan,* 377 Ill. 187; *Springfield Gas and Electric Co.* v. *City of Springfield,* 292 Ill. 236.) Those practicing medicine and dentistry do not come within the same circumstances as optometrists. The act here clearly defines the practice of optometry and operates equally and uniformly upon all brought within that relation and circumstance.

Nor we do believe that the provision relating to the display of the certificate of registration is unreasonable or arbitrary. A consideration of the entire regulation, and not solely of the isolated phrase seized upon by appellee, clearly discloses the legislative purpose is to require the proper display of the certificate so that the public may be adequately informed and the registrants properly policed, while at the same time prohibiting the use of the certificate for advertising purposes or as an instrument of creating business rivalries which would operate to the detriment of

the public. There is no argument but what the practice of optometry has an effect on the public health and welfare sufficient to justify that practitioners be licensed, and from such fact we believe it is reasonable for the legislature to prescribe the use of the license which they have suffered a registrant to receive. A complementary provision with regard to the display of the certificate of registration appears in section 13(n) of the act and will be discussed in our consideration of the objections to that provision.

Sections 13(k), 13(*l*), 13(m), and 13(n) of the Illinois Optometric Practice Act of 1951, which refer to the grounds for the suspension, revocation, or refusal to issue or renew a certificate of registration, are as follows:

"(k) Displaying the name and title of the registrant or other information in lettering larger than four inches in height at street level, or larger than seven inches in height in offices above street level, or illuminating such name, title or other information by colored or neon lights at any time, or displaying any eyeglass or eye sign, whether painted, neon, decalcomanic or otherwise, either in the form of eyes or structure resembling eyes, eyeglass frames, eyeglasses or spectacles, which display or illumination takes place after the expiration of one year from the effective date of this Act;

"(*l*) Placement of the name and title of a registered optometrist in any city, commercial, telephone or other public directory, or directory in public or office buildings, by display or type that is substantially dissimilar in size, shape, or color to that used for other practitioners of the ·healing arts in the same directory;

"(m) Displaying by any registered optometrist, of any spectacles, eye-glasses, eyeglass or spectacle frames or mountings, goggles, lenses, prisms, spectacle or eye-glass cases, ophthalmic material of any kind, optometric instruments, or optical tools or machinery, or any merchandise, material, or advertising of a commercial nature in office

windows or reception rooms or in display cases outside of the office, where the display of such merchandise, material or advertising would be visible from the street;

"(n) Displaying the license, diploma or certificate in such manner that it is visible from the street;"

The decree of the trial court contains a finding that these sections are special legislation and that they violate due process of law.

While at first blush it would seem that sections 13(k), (*l*) and (m) appear to be an arbitrary interference with the right of one to practice optometry, such thoughts are dispelled when the relative aspects of public health and welfare are considered. As pointed out in *Semler* v. *Oregon State Board of Dental Examiners,* 294 U.S. 608, 79 L. ed 1086, the legislature is not dealing with traders in commodities but with the vital interest of public health and the treatment of bodily ills. The public is concerned not only with the maintenance of standards which will insure competency in the individual practitioner, but protection against those "who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief." In addition, the community is concerned in providing safeguards not only against deception, but against practices which tend to demoralize the business or profession by forcing its members into unseeming rivalry, which would tend to enlarge the opportunity of the least scrupulous. Advertising by large display, glaring and lighted signs or by depicting a part of the human body, and other forms of advertising, have been held to produce such undesired results and accompanying detriment to the public welfare. (*Winberry* v. *Hallihan,* 361 Ill. 121.) In the case last cited and in the *Semler case,* it was held that the legislature was entitled to consider the general effects of the practices it described, and, if the effects were injurious in facilitating unwarranted and misleading claims, to counteract them by general rule even though in particular instances there might

be no actual deception or misstatement. This the legislature has done in enacting sections 13(k), 13(*l*) and 13(m) by restricting the advertising of optometrists within limits which are reasonable and calculated to eliminate the injurious effects of uninhibited advertising. Such legislation comes within the police power and is valid. *Winberry* v. *Hallihan,* 361 Ill. 121.

Specific objection is made by appellee to the language of section 13(*l*) which allows a certificate of registration to be revoked for using directory advertising "that is substantially dissimilar in size, shape or color to that used for the other practicitioners of the healing arts in the same directory." Although appellee seeks to argue that the section is vague, indefinite and uncertain to a degree that deprives him of knowledge of what the law requires, his argument becomes unrealistic when it is seen that his complaint alleges that he and his counsel have determined that his present method of directory advertising is of a type forbidden by the Optometric Practice Act. When the general considerations which have fostered the rule that uniform and subdued methods of advertising are desirable in trades and professions which deal with public health and the treatment of bodily ills are viewed in face of appellee's pleading which admits that the duty placed upon him is neither vague nor uncertain, we must conclude that the regulation tends reasonably to serve a legitimate interest of the public.

Appellee next complains of section 13(n) which prohibits the display of a license, diploma or certificate in such a manner that it is visible from the street. The clear intent of the legislature is that such documents may not be used for advertising purposes. From what has been said before about the undesirability of advertising which would tend to produce unseeming rivalries and demoralization within the profession, we think the relation to the public health and welfare is apparent. The fact that a

practitioner received his license at an earlier date, or that he received a diploma from a large or famous school would present advantage to the unscrupulous which may or may not have a direct relation to the standards of ability and competency which it has been the legislative aim to establish and which should be the guides upon which those seeking treatment will rely. We think that the legislature acted reasonably and within the police power of the State.

Appellee next complains of section 13(r) of the act which he contends is vague and uncertain and violative of his right of due process of law. The section provides that a certificate may be revoked for: "The performance of optometric service in conjunction with a scheme or plan with another person, firm or corporation known to be advertising in a manner contrary to the provisions of this Act or otherwise violating the laws of the State of Illinois concerning the practice of optometry." Appellee's attack on this provision is based largely on the argument that some of the language therein renders it vague and uncertain. It is suggested that the phrase "performance of optometric service" is nowhere defined, thus leaving its meaning for registrants to ascertain at their peril. We think the only definition which can obtain, or to which the phrase can relate, is the practice of optometry as it is defined in section 3 of the act. Complaint is also made that the words "known to be advertising" make it indefinite and uncertain as to who shall have such knowledge. Every presumption is in favor of the validity of statutes which promote the public health and welfare, and constructions which would render a statute obnoxious to the constitution is to be avoided if possible. (*People ex rel. Soble* v. *Gill,* 358 Ill. 261; *Chicago, Burlington and Quincy Railroad Co.* v. *Commerce Com. ex rel. Brotherhood of Railroad Trainmen,* 364 Ill. 213.) All doubts or uncertainties arising from language of an act must be resolved in favor of validity. (*First Nat. Bank* v. *Wedron Silica Co.* 351 Ill.

560.) In the light of these established rules of construction, we must conclude that the phrase must be construed to mean the knowledge of the licensee, for any other interpretation would raise constitutional questions and a disregard for constitutional rights not intended by the legislature. Appellee also complains of the same provision that there is no definition or clarification of what the legislature meant by a "scheme or plan." While there is some doubt in the record as to whether the constitutionality of the provision on this ground has been drawn into question by appellee's pleadings, we are inclined to agree that it has been and that the words "scheme or plan" do not describe the relationships forbidden with the definiteness and certainty that is required so that those to whom the provision applies may know their rights and duties. The words "scheme or plan" may, however, be omitted from the provision without affecting its meaning, which is to prevent a registered optometrist from practicing optometry in conjunction with another person, firm or corporation known to be advertising in a manner contrary to the provisions of the Illinois Optometric Practice Act, or otherwise violating the laws of the State of Illinois concerning the practice of optometry. If the main intent of a statute can be collected from the statute, words may be modified or altered, declared surplusage or even supplied so as to obviate any repugnancy or inconsistency with the legislative intent. (*People ex rel. Simpson* v. *Funkhouser,* 385 Ill. 396.) By treating the words "scheme or plan" as surplusage in this case, the intent of the legislature may validly be given effect.

The next section assailed by appellee is section 24, which the trial court found to be violative of section 13 of article IV of the Illinois constitution on the grounds that it amends the Injunction Act, (Ill. Rev. Stat. 1951, chap. 69,) and that no statement of such amendment appears in the title of the Illinois Optometric Practice Act. Briefly, section 24 provides that violations of the act by any persons

who have not been issued a certificate of registration, or by any person or persons who are subject to the act, shall constitute a public nuisance subject to repression by injunction of any court of competent jurisdiction. It is appellee's contention that the language of the section which permits an injunction to issue without bond or notice upon the filing of a verified petition, supported "by affidavit or otherwise," amends the provisions of the Injunction Act which require a showing of "good cause" for the waiver of the bond requirement, (Ill. Rev. Stat. 1951, chap. 69, par. 9,) and a showing that the rights of the one seeking the injunction will be unduly prejudiced unless the injunction is issued immediately or without notice. (Ill. Rev. Stat. 1951, chap. 69, par. 3.) It should be noted that section 24 of the Illinois Optometric Practice Act has application only to those persons, firms, or corporations who attempt to practice optometry without a certificate of registration, or to those persons, firms or corporations who attempt to violate the terms of the act. In the record before us, appellee does not fall within either class. To raise the constitutionality of a particular provision of a statute, the complainant or intervenor must be directly affected by the provision attacked. Any decision on the validity of section 24 would be mere dictum and its consideration is unnecessary. *Winberry* v. *Hallihan,* 361 Ill. 121; *People* v. *Diekmann,* 285 Ill. 97; *People* v. *Huff,* 249 Ill. 164.

Lastly, appellee complains of section 9, which makes provision for an examination to be given by the Department of Registration and Education to applicants for the certificate of a registered optometrist. Appellee insists, and the trial court held, that the section unlawfully delegates legislative power to the Department in violation of article III of the Illinois constitution. As appellee is already a certificate holder and is not required to take the examination required by the act, it is obvious that he cannot be directly affected by the provision attacked. Under the

authorities cited in the preceding paragraph he is without standing to raise its constitutionality in this proceeding.

For the reasons given, we are of the opinion that the Illinois Optometric Practice Act of 1951, is not subject to those constitutional objections urged by appellee which we have been at liberty to consider. In accordance with our views, the decree of the superior court of Cook County is reversed, and the cause remanded with directions that the permanent injunction issued against appellants be dissolved.

*Reversed and remanded, with directions.*