NORWOOD, Appellant v. PARANTEAU et al., Respondents

(63 N. W.2d 807)

(File No. 9375. Opinion filed April 13, 1954)

304

Parnell J. Donohue, Bonesteel, for Appellant.
Austin & Hinderaker, Watertown, for Respondents.

LEEDOM, J.  The State Board of Examiners in Optome-

try, the respondents, pursuant to the authority of SDC 27.07, as amended, and the rules and regulations promulgated thereunder, cited appellant, who had practiced optometry in South Dakota for about 30 years, to appear for a hearing before the Board on a charge of "unprofessional conduct". The accusation of unprofessional conduct related entirely to the manner in which appellant had advertised the availability of his professional services. The evidence taken at the hearing disclosed that appellant's manner of advertising did violate the rules of the Board. It is appellant's position that the rules thus violated are an invasion of his constitutional right to follow his lawful vocation and are therefore void and that they are so restrictive as to eliminate the itinerant practitioner from the field of optometry and therefore, if given validity, achieve by indirection a result the law would not condone if such result were attemped by direct regulation. After the hearing the Board entered findings of fact and conclusions of law adverse to appellant, determined that his manner of advertising constituted unprofessional conduct and made and filed an order revoking his certificate of registration which constituted his license or authority to practice. He appealed to the circuit court of Hughes county and that court entered an order aflirming the order of revocation entered by the Board. The doctor has appealed to this court. After careful consideration of all of appellant's assignments of error we are of the view that the Board was within its authority in promulgating the rules here involved and in revoking appellant's registration for the violation.

SDC Supp. 27.0701 defines the practice of optometry as follows:

> "That 'the practice of optometry 'is declared to be a profession and defined as examination of the human eye and its appendages, and the employment of any means for the measurement of the powers of vision, or any visual, muscular, neurological, interpretative, or anatomical anomalies of the visual processes, and the prescribing or employment of lenses, prisms, frames, mountings, visual training procedure, and any other means or method for the correction, remedy, or relief of any

insufficiencies or abnormal conditions of the visual processes of the human eye and its appendages except by the use of drugs or surgery, and an optometrist is one who practices optometry under the provisions of this chapter."

SDC Supp. 27.0703 relating to the powers of the Board provides in part is subsection (3):

"* * * The Board may prescribe the mediums of advertising that may be used by optometrists and the size, nature, and type of signs and professional cards that may be used. * * *"

SDC Supp. 27.0707 provides for revocation of certificates of registration by the Board after hearing, for stated causes. Subsection (6) lists "unprofessional conduct" as a cause for revocation and defines the phrase. This subsection expressly provides independently of rules to be promulgated that certain specified conduct is unprofessional and therefore grounds for revocation of a certificate. Included in this category is the specific prohibition against use of substantially all the usual mediums of advertising to "set forth more that the name, profession, title, location ,phone number and office hours of the optometrist," thus in effect limiting advertising in all events to these items. And then pursuant to the administrative power vested in the Board by the quoted provision of SDC Supp. 27.0703(3), SDC Supp. 27.0707(6) brings within the "unprofessional" category, conduct violative of rules of the Board, with this language:

"* * * advertising wherein the optometrist employs any form of newspaper, sign, literature or directory professional card or window or public exhibition display of optical materials, hand bills, road signs, clock signs, novelties or favors contrary to or violating the code of ethics or any of the other lawful rules and regulations properly promulgated by the State Board."

Pursuant to the statutory authority the Board adopted, among other rules, these:

"5.01 Printed professional advertising shall consist of and be limited to one professional card per

issue of a newspaper, setting forth nothing more than the name, title, address, telephone numbers and office hours of the optometrist, with said advertisement limited to a maximum size of one column one inch per individual name and a maximum size of one column two inches for a combination of names of associated optometrists. Such professional card shall not be included in general local news columns or want ad columns, but shall be included in the regular newspaper panel of professional cards."

"5.03 No public advertising by printed matter, radio, window display, road signs, clock signs, hand-bills, posters, circulars, periodicals, novelties, favors * * * shall be used."

The testimony discloses that appellant has for many years served as an optometrist in several communities in western South Dakota. His practice is that of the itinerant as that word is used in the evidence. He visited the towns where he practiced with considerable regularity several times a year and maintained neither a permanent office nor a residence in any town so served. Prior to each visit he advertised his coming by a system developed over the years and which he deemed necessary to bring his old and new patients to his temporary offices. As the restrictions on advertising were first imposed he made an attempt to follow the spirit if not the letter of the law and learned as he testified, that the more moderate advertising thus employed resulted in appreciable loss of business; and so he changed again in the direction of his earlier advertising practices. At the time just prior to his hearing he was using media and methods admittedly in violation of the regulations. He distributed prohibited handbills. His newspaper ads exceeded the size allowed by the rules of the Board, and the composition was not that prescribed by statute but contained the word "Notice" and the phrases "Eyes Examined" and "Glasses Fitted" in addition to the doctor's name and information as to the time and place of his visit. He also displayed a banner outside the building in which his temporary office was situated. It violated the rules and regulations. It

was neither claimed nor proven that any of appellant's advertising was deceptive, and no charge was made of misconduct except as to use of unauthorized advertising as stated.

■ ■ There is no question but that reasonable regulation of optometry either by specific statutory rules or by regulations promulgated by an administrative board pursuant to statutory authority, is within the police power conferred upon the legislature in the interests of the preservation of the public health and general welfare. Annotations 22 A.L.R.2d 939 and 98 A.L.R. 905. Much space is devoted in appellant's brief to the proposition that regulations of the nature here involved would be proper if optometry were designated to be one of the "learned" professions but are improper where, as in South Dakota, the statute declares optometry to be only a "profession". Reliance is placed on the case of State ex rel. Attorney General v. Gus Blass Co., 193 Ark. 1159, 105 S.W.2d 853. The Arkansas case was decided in 1937. We find no sound basis for any rule of law that provides strict regulation for the learned professions and prohibits such regulation as to optometry on the ground it had not been designated a "learned profession" by legislative action. See Klein v. Department of Registration and Education, 412 Ill. 75, 105 N.E.2d 758, certiorari denied, 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. 664; also Bennett v. Indiana State Board of Registration And Examination in Optometry, 211 Ind. 678, 7 N.E.2d 977. The contention is rejected by the New Jersey court in a recent and well considered case. Abelson's Inc. v. New Jersey State Board of Optometrists, 5 N.J. 412, 75 A.2d 867, 869, 22 A.L.R.2d 929. In that case the court said:

> "The insistence is that the calling is not a 'learned profession,' but rather a 'statutory profession' falling into the category of 'occupations and businesses' reasonably regulable only in the particular areas in which the subject matter touches 'the health or welfare of the community;' and that certain sections of the amendatory act of 1948 are wholly without relevancy to the pubic health, but serve the pecuniary interest of the optometrists

alone, and so constitute a deprivation of property without due process of law in contravention of the Fourteenth Amendment of the Federal Constitution.

"Optometry is not a mere trade or craft. It is an applied branch of the science of physiological optics, directed to the improvement of visual acuity through the correction of refractive errors. * * *

"Thus, by its very nature, the practice of optometry is subject to regulation for the protection of the public against ignorance and incapacity and deception and fraud, equally with the practice of ophthalmology and the other 'learned professions', a category originally confined to theology, law and medicine, but long since broadened in keeping with the diffusion of scientific learning and the need of specialized knowledge in the functioning of our ever-expanding and complex society. * * * One cannot qualify for the practice of the profession unless he has been graduated from an approved school or college of optometry with the degree of doctor of optometry. * * *

"But in the final analysis, it is the nature of the subject matter and the end to be served that determine the quality and content of the regulatory power. The public health is a paramount concern of government. Apart from the protection of the individual against incapacity and fraud, the correction of visual deficiencies bears a direct relation to the public safety and our general social and economic well being."

We are satisfied that the validity of the regulations here involved does not depend on a legislative determination that optometry is a "learned profession". These regulations in our opinion flow from the same legislative authority that this court recognized in Cavanagh v. Coleman, 72 S.D. 274, 33 N.W.2d 282; and see City of Sioux Falls v. Kadinger, 74 S.D. 217, 50 N.W.2d 797, and 75 S.D. 86, 59 N.W.2d 631; also Bartron v. Codington County, 68 S.D. 309, 2 N.W.2d 337, 140 A.L.R. 550.

■ It is also our view that the rules adopted by the Board and which appellant violated do not go beyond the specific authority granted by the statute so as to constitute legislative rather than administrative action by the Board. This is not a case where the power is defined in vague and general language. It will be observed that the statutory language quite specifically authorized the Board to do exactly what it did do, that is the statute authorized the Board to "prescribe the mediums of advertising * * * and the size, nature, and type of signs and professional cards that may be used." Construing this with the statutory definition of unprofessional conduct it cannot be said that the Board promulgated rules broader or in excess of the legislative intent in the statutory enactment.

The serious question in the case is whether or not the statutory provisions, and the rules adopted thereunder, are reasonably related to the broad purpose of the enactments, that is the preservation of the public health and promotion of the general welfare. Two considerations, primarily, lead us to the conclusion that we cannot hold the statute and the regulations unreasonable and invalid.

■ ■ **First:** It is a well established principle that once the right to regulate is determined to be within the police power "debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment * * *." Sproles v. Binford, 286 U.S. 374, 388, 52 S.Ct. 581, 585, 76 L.Ed. 1167. Cases upholding regulation of optometry, and the general principle as well that all doubts or uncertainty must be construed by courts in favor of validity of the regulation, are Klein v. Department of Registration and Education, supra, 412 Ill. 75, 105 N.E.2d 758, and State v. Rones, 223 La. 839, 67 So.2d 99, 105. In the latter case the court said:

> "No citation of authority is necessary that the constitutionality of every statute is presumed, and that it is the duty of the court to uphold the statute wherever possible. For this purpose every consideration of public need and public policy upon which the Legislature could rationally have based such legislation should be weighed by the court,

and, if the statute is not clearly arbitrary, unreasonable, and capricious, it should be upheld as constitutional."

**Second:** Looking at the enactments from the viewpoint of a legislator, in a search for a rational connection between the severe restrictions on advertising and the broad purpose of protecting the public, it is necessary to consider the history of legislation that either prohibits or restricts advertising of professional services. The earliest cases involved physicians and surgeons and are gathered in the annotation at 54 A.L.R. 400. Regulatory and prohibitive measures were generally sustained as valid exercise of police power. In McNaughton v. Johnson, 242 U.S. 344, 37 S.Ct. 178, 61 L.Ed 352, Ann.Cas.1917B, 801, the Supreme Court recognized that the authority that justifies regulation of medicine is the same that justifies regulation of optometry. Referring to cited cases establishing the authority of a state to regulate the practice of medicine using the word **medicine** in its broadest sense, the Court in the McNaughton case said with reference to the measures regulatory of optometry then under attack. "The cases cited above establish that the state has such power and it [the regulation] requires no more of complainant than it requires of any other ophthalmologist, to use her word, or of any other optometrist, to use the word of the statute." 242 U.S. 349, 37 S.Ct. 180. Dealing with highly restrictive provisions as to advertising by the dental profession Chief Justice Hughes in Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 571, 79 L.Ed. 1086, used language that reveals the reasonable connection between the public welfare and the restrictions. He said:

"The state may thus afford protection against ignorance, incapacity, and imposition. * * *

"Recognizing state power as to such matters, appellant insists that the statute in question goes too far because it prohibits advertising of the de-. scribed character, although it may be truthful. * * *

"The state court defined the policy of the statute. The court said that while, in itself, there was

nothing harmful in merely advertising prices for dental work or in displaying glaring signs illustrating teeth and bridge work, it could not be doubted that practioners who were not willing to abide by the ethics of their profession often resorted to such advertising methods 'to lure the credulous and ignorant members of the public to their offices for the purpose of fleecing them.' The legislature was aiming at 'bait advertising.' 'Inducing patronage,' said the court, 'by representations of "painless dentistry," "professional superiority," "free examinations," and "guaranteed" dental work' was, as a general rule, 'the practice of the charlatan and the quack to entice the public.'

"We do not doubt the authority of the state to estimate the baleful effects of such methods and to put a stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous. * * *

"The legislature was entitled to consider the general effects of the practices which it described, and if these effects were injurious in facilitating unwarranted and misleading claims, to counteract them by a general rule even though in particular instances there might be no actual deception or misstatement."

■    From these authorities it is clear that highly restrictive measures as to physicians and surgeons are valid, also that the authority and the need for regulation of physicions, surgeons, and dentists are basically and actually the same with respect to optometry; also that regulation within the broad field has been slowly evolutionary in character both as to the extent of the restriction and the professions to which applied.   What this court said in the Bartron Case, supra, 68 S.D. 309, 2 N.W.2d 337, 345, is indicative of the trend and pertinent on the question of the reasonableness of the regulations here involved:

> "The licensing statutes with their emphasis on character and professional conduct evidence a fixed public desire and will not only to foster, but to develop and reinforce, these basic attributes of its professional servants. The constant trend of public demand, as exhibited by these licensing statutes, is for mounting standards, a more painstaking investigation of the character and professional conduct of applicants for entrance into these regulated fields, and a more constant vigilance in observing the coduct of those to whom the privilege of practice has been granted. Manifestly, that which has a tendency to blight the character or lower the standards of the business or professional practice of these individuals would be in contravention of the public aspirations so clearly reflected in the licensing statutes."

The cases and legislative enactments involved further reveal that as to physicians, surgeons, and dentists advertising in the usual sense, and except for the professional card provided by our statute for the optometrist, is almost universally prohibited.   "It would seem that the public has as much need to be protected from quacks and charlatans in optometry as in dentistry or any other subdivision of medicine." State ex rel. Sisemore v. Standard Optical Co. of Oregon, 182 Or. 452, 188 P.2d 309, 312. Considering that the legislature has only applied to optometry regulations validly imposed on kindred activties, and that the best authorities hold the legislative power with respect to the one is the same as to the others, it seems quite clear to us that we cannot say

there is no reasonable basis for these regulations; and this is true even though they may seem to us more restrictive than they need be to achieve the purpose sought. We therefore hold the regulations valid.

■ What we have said disposes of all the issues. In view however of appellant's urgent contention that the regulations are invalid because they would eliminate him from the itinerant field we specifically deal with this subject very briefly. We first observe that appellant may be unduly alarmed about the effect of the new rules on the practice of an itinerant. Assuming however that he is right and that the regulations so hamper the itinerants within the field, as to render it quite impossible to continue along the established pattern, relief cannot come from the courts where, as here, the decision is reached that the regulations constitute reasonable action by the administraive board under authority properly vested through a valid legislative exercise of police power. These regulations apply alike to all the optometrists in South Dakota. As Judge Vinson said in Johnson v. Board of Dental Examiners, 77 U.S.App.D.C. 119, 134 F.2d 9, 12, certiorari denied, 319 U.S. 758, 63 S.Ct. 1177, 87 L.Ed. 1710:

> "Like the rain, which falleth on the just and on the unjust, the regulations of the Board affect alike all dentists in the District of Columbia. In legislation of this character, and regulations thereunder, it may well be that conscientious and responsible members of the profession are affected by regulations designed to constrain their less scrupulous brethren in the exploitation of the public."

The views herein expressed coincide with those of the circuit court. The order from which the appeal is taken is affirmed.

All the Judges concur.