# W. J. REYBURN AND ANOTHER v. MINNESOTA STATE BOARD OF OPTOMETRY AND OTHERS.

78 N. W. (2d) 351.

June 29, 1956—Nos. 36,768, 36,769.

*Milton H. Altman* and *Lipschultz, Altman, Geraghty & Mulally,* for appellants.

*Miles Lord,* Attorney General, and *Richard W. Johnson,* Special Assistant Attorney General, for respondents.

MATSON, JUSTICE.

Appeal is from an order denying plaintiffs' motion for a new trial.

Plaintiffs are optometrists licensed to practice by the State of Minnesota. Upon the separate complaints of Dr. Carel C. Koch, plaintiffs were cited and required to appear before the Minnesota State Board of Optometry to show cause why their licenses should not be revoked or suspended. The complaints alleged, among other things, that plaintiffs had in the past and at the time of the complaint an arrangement or agreement with the King Optical Company, a dispensing optician, whereby said company has been engaged as a "steerer" to obtain business for each plaintiff; that numerous referrals have been made to plaintiffs by the said company; that plaintiffs in turn refer persons back to the said company for spectacles or eye glasses; that plaintiffs have neglected or failed to check or examine the lenses and other parts of the glasses furnished by the King Optical Company to the patients so referred to plaintiffs in order to determine whether the glasses met the patient's needs; and

that plaintiffs have an agreement with the King Optical Company apportioning the income attributable to the referrals.

Pursuant to the above complaints the defendant Minnesota State Board of Optometry, hereinafter referred to as the board, issued an order requesting plaintiffs to show cause on March 11 and March 12, 1954, why their licenses to practice optometry should not be revoked or suspended. Prior to the hearing dates plaintiffs each commenced an action against the defendants—the board and its individual members—praying for certain declaratory relief and an injunction enjoining defendant board and its members from proceeding with the hearing of the charges based upon Dr. Koch's complaints. The actions were consolidated for trial which resulted in a judgment against plaintiffs dismissing their complaints and denying the injunctive and declaratory relief sought. Plaintiffs thereupon made a motion for a new trial. Plaintiffs' motion was denied, whereupon this appeal was taken.

This appeal presents questions relative to (1) the constitutionality of M. S. A. 148.57, subd. 3; (2) the validity and application of board's rule No. 8; (3) whether the board is disqualified for bias and prejudice; and (4) whether the signed complaints are sufficient to confer jurisdiction on the board.

■ Plaintiffs contend that § 148.57, subd. 3, fails to provide sufficient administrative standards to guide the board in the exercise of its power to revoke or suspend a practitioner's license for unprofessional conduct and therefore constitutes a delegation of legislative power in contravention of Minn. Const. art. 3. Section 148.57, subd. 3, insofar as here pertinent, provides:

"* * * may revoke the certificates or suspend the right to practice of any person * * * who is found by the board to be * * * *guilty of unprofessional conduct.* 'Unprofessional conduct' means any conduct of a character likely to deceive or defraud the public, including, *among other things,* * * * *the employment of 'cappers' or 'steerers' to obtain business; splitting or dividing a fee with any person;* * * *.*" (Italics supplied.)

Plaintiffs' contention rests on the assumption that the use of the phrase "among other things" empowers the board to formulate its own definition of unprofessional conduct whereby it may revoke or suspend a license according to its own caprice and whim and not as guided by any reasonable standards of administrative action.

Although purely legislative power cannot be delegated, we find no such delegation here. In Lee v. Delmont, 228 Minn. 101, 113, 36 N. W. (2d) 530, 538, this court said:

"* * * Although discretion to determine when and upon whom a law shall take effect may not be delegated, the legislature may confer upon a board or commission a discretionary power to ascertain, *under and pursuant to the law,* some fact or circumstance upon which the law by its own terms makes, or intends to make, its own action depend. The power to ascertain facts, which automatically brings a law into operation by virtue of its own terms, is not the power to pass, modify, or annul a law. If the law furnishes a reasonably clear policy or standard of action which controls and guides the administrative officers in ascertaining the operative facts to which the law applies, so that the law takes effect upon these facts by virtue of its own terms, and not according to the whim or caprice of the administrative officers, the discretionary power delegated to the board or commission is not legislative.[1] * * *

* * * * *

"The policy of the law and the standard of action to guide the administrative agencies may be laid down in very broad and general terms. Annotation, 79 L. ed. (U. S.) 489."

■ "Unprofessional conduct" is conduct which violates those standards of professional behavior which through professional experience have become established, by the consensus of the expert opinion of the members, as reasonably necessary for the protection

---

[1]See, Dimke v. Finke, 209 Minn. 29, 295 N. W. 75; Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. ed. 446. For a general discussion of a delegation of legislative power and standards, see Davis, Administrative Law, c. 2, and especially his summary and conclusions, § 27; Lee v. Delmont, *supra.*

of the public interest. In establishing the necessity for and the existence of such standards, every member of the profession should be regarded as an expert.[2]

"* * * There is a moral dereliction in failure by any member of a profession to apply in professional practice the standards which, by consensus of opinion in the profession, are necessary."[3]

What constitutes unprofessional conduct by an optometrist may be determined by those standards which are commonly accepted by those practicing the profession in the same territory.[4]

■ The legislature need not enumerate what specific acts or omissions constitute unprofessional conduct since the phrase "unprofessional conduct" itself provides a guide for, and a limitation upon, the exercise by the board of its power to revoke a practitioner's license. The legislature by that term has not delegated to the board power to define as "unprofessional" any conduct which by the consensus of the expert opinion is ethical and consonant with the public welfare. The board is thereby empowered to declare as "unprofessional" *only* such conduct as fails to conform to those standards of professional behavior which are recognized by a consensus of expert opinion as necessary for the public's protection.[5] It follows that the board is not determining when and upon whom the delegated discretionary power is to take effect but is simply ascertaining the existence of a member's acts or omissions which, if they violate the accepted standards of professional behavior, automatically bring the law into operation by its own terms.

■ That the phrase "unprofessional conduct," here defined as *any conduct of a character likely to deceive or defraud the public,*

---

[2]Semler v. Dental Examiners, 294 U. S. 608, 55 S. Ct. 570, 79 L. ed. 1086; Matter of Cherry v. Board of Regents, 289 N. Y. 148, 44 N. E. (2d) 405.

[3]Matter of Cherry v. Board of Regents, 289 N. Y. 148, 158, 44 N. E. (2d) 405, 412.

[4]Matter of Cherry v. Board of Regents, 289 N. Y. 148, 44 N. E. (2d) 405; 70 C. J. S., Physicians and Surgeons, § 31.

[5]Matter of Cherry v. Board of Regents, *supra;* see, Matter of Bell v. Board of Regents, 295 N. Y. 101, 65 N. E. (2d) 184, 163 A. L. R. 900.

provides a sufficient guide for the ascertainment of the operative facts which bring the statute into operation is clearly indicated by our decision in State ex rel. Powell v. State Medical Examining Board, 32 Minn. 324, 325, 20 N. W. 238, 239, wherein we held constitutional a statutory provision that "The board of examiners may refuse certificates to individuals guilty of *unprofessional* or dishonorable *conduct, and they may revoke certificates for like causes."* (Italics supplied.) It is also the majority rule that a statute empowering a regulatory board to revoke the license of a physician, surgeon, or dentist for unprofessional conduct is not void for uncertainty and indefiniteness because it states the grounds for the revocation of the license in general terms and fails to specify what particular acts or omissions constitute unprofessional conduct.[6] This principle is equally applicable to the practice of optometry.[7]

■ Since "unprofessional conduct" is of itself, without amplification, a sufficiently definite ground upon which the board may revoke or suspend a license, it cannot reasonably be maintained that such a statutory provision becomes invalid simply because the legislature has expressly defined certain acts as unprofessional conduct but has left it to the board to determine what additional and other acts and omissions are "unprofessional." It would be unreasonable to hold that, when the legislature prescribes only the basic standard of "unprofessional conduct," the statute is sufficiently definite to be valid but that it is invalid when the legislature attempts a partial enumeration of what constitutes such conduct. The statutory phrase "among other things" coupled to the enumeration of specific or illus-

---

[6]Annotations, 5 A. L. R. 94 and 79 A. L. R. 323; see, Matter of Cherry v. Board of Regents, 289 N. Y. 148, 44 N. E. (2d) 405; Matter of Bell v. Board of Regents, 295 N. Y. 101, 65 N. E. (2d) 184, 163 A. L. R. 900, with Annotation at 909; 41 Am. Jur., Physicians and Surgeons, § 46; see, also, Davis, Administrative Law, § 12.

[7]Bennett v. Indiana State Board of Reg. & Ex. in Optometry, 211 Ind. 678, 7 N. E. (2d) 977; Ritholz v. Indiana State Board of Registration, etc. (N. D. Ind.) 45 F. Supp. 423; Melton v. Carter, 204 Ark. 595, 164 S. W. (2d) 453; Finlay Straus, Inc. v. University of State of New York, 270 App. Div. 1060, 62 N. Y. S. (2d) 892; see following Annotations in re validity of regulation of optometry: 22 A. L. R. (2d) 939, 945 to 950, and 98 A. L. R. 905.

trative acts of unprofessional conduct is indicative merely of a legislative intent not to occupy the entire field by express definition but to delegate to the board the duty of ascertaining what other or additional acts violate the profession's acceptable standards. It cannot be expected of a legislature that it should forbid specifically all improper practices likely to occur. Bennett v. Indiana State Board of Reg. & Ex. in Optometry, 211 Ind. 678, 687, 7 N. E. (2d) 977, 981.

■ Plaintiffs contend that the board's rule No. 8, as amended, conflicts with § 148.57, subd. 3, and is invalid because it interprets the statute to mean that *the employment of cappers and steerers to obtain business* is unprofessional conduct even though the latter are not paid a salary, fee, or commission. We do not agree. The word *employment* as used in the statute is synonymous with the word *use*. Any other construction would be to attribute to the legislature the intent to bring about the absurd and unreasonable result that the use of cappers and steerers constitutes unprofessional conduct only when they are paid. That the word employment is not to be given a narrow and technical meaning is apparent from the fact that the legislature has made it clear that "unprofessional conduct" should be given a broad interpretation, since besides enumerating a number of activities as specifically constituting unprofessional conduct it left the way open for other activities to be so classified by using the phrase *among other things.* This is also apparent from its definition of unprofessional conduct *as any conduct of a character likely to deceive or defraud the public.* We can only conclude that the word *employment* is to be construed in the broad sense of meaning *use* and that it is immaterial whether "cappers" or "steerers" are paid or unpaid. We find no inconsistency between rule No. 8 and the statute itself.

Since § 148.57, subd. 3, by any reasonable interpretation clearly designates the employment of "cappers" or "steerers" (paid or unpaid) to obtain business as an unprofessional conduct, it becomes unnecessary to consider whether rule No. 8 is invalid for failure of the board to file a copy of such rule in the office of the clerk of the district court in each county and to provide certain other named persons with a copy thereof as provided by § 15.045. At best, the

amendment of rule No. 8 was merely an attempt by the board to interpret the meaning of the word *employment* to conform to the legislative intent. Such interpretation was wholly unnecessary. In any event the rule was not binding upon this court.[8] Furthermore, since "unprofessional conduct" may be ascertained from the consensus of the expert opinion of the practicing optometrists, and since plaintiffs are numbered among such experts, they are charged with knowledge that the employment of "cappers" or "steerers," paid or unpaid, constitutes "unprofessional conduct." It is in fact recognized that when, as here (§ 148.53), the legislature empowers the administrative board to adopt such rules and regulations as it may deem necessary or expedient, and does not require the board to do so, the antecedent adoption by the board of rules and regulations defining what constitutes "unprofessional conduct" is not a prerequisite to the suspension or revocation of a practitioner's license for "unprofessional conduct." Matter of Bell v. Board of Regents, 295 N. Y. 101, 65 N. E. (2d) 184, 163 A. L. R. 900, with Annotation at 909.[9]

Plaintiffs' contention that the defendant board is biased and is therefore disqualified from hearing and deciding the charges against the plaintiffs is not supported by the record. It is of no significance that Dr. Koch may have been asked to sign a complaint. There is evidence that he came to the board and suggested that practices were being conducted by plaintiffs which demanded board investigation. Under these circumstances it was not improper to request Dr. Koch to sign a written complaint. Furthermore, there was testimony that others had made complaints against the plain-

[8]See, Davis, Administrative Law, § 55. It is a fact, however, that interpretive rules are given varying degrees of weight in certain situations. See, Id. §§ 56 to 59.

[9]In holding that it is immaterial whether rule No. 8 as amended was properly promulgated and filed, we by no means condone such inexcusable neglect to comply with the statutory requirements where a rule is material. The statutory provisions governing the promulgation and filing of rules and amendments, as well as the giving of proper notice, are easily ascertained by the members of administrative boards and, if for no other reason, the requirements should be respected as a matter of fair play.

tiffs to the board. One of the functions of such an administrative board is to investigate complaints as to unprofessional conduct and the discharge of that duty does not of itself establish bias. There is also ample testimony that rule No. 8 was amended not for the particular purpose of proceeding against the plaintiffs but merely to adopt an interpretation to conform with the true intent of the legislature as expressed in § 148.57, subd. 3. We attach no significance to the references by board members to the King Optical Company as indicating a determination by the board to put that company out of business in this state. Since the complaints against plaintiffs alleged that they had engaged the King Optical Company as a steerer to obtain business, that company naturally became a proper subject of discussion in passing upon the complaints.

There is likewise no merit in the contention that the complaints signed by Dr. Koch do not confer jurisdiction upon the board. The complaints specifically and adequately inform and charge plaintiffs with conduct in violation of § 148.57, subd. 3. The complaints in plain language specifically charge them with operating under an agreement with the King Optical Company whereby it has been engaged as a "steerer" to obtain business for them and that numerous referrals of persons for eye tests have been made to plaintiffs by the King Optical Company pursuant to such agreement. The complaints further allege that as a part of the arrangement between plaintiffs and King Optical Company provision is made for apportioning the income attributable to the referrals. This apportionment of income attributable to the referrals is in itself "unprofessional conduct" as defined by § 148.57, subd. 3, as including "splitting or dividing a fee with any person." Finally, the complaints allege as constituting unprofessional conduct neglect on the part of plaintiffs to check properly and examine the lenses and other parts of the glasses furnished by the company. The complaint unmistakably alleges various acts of conduct expressly characterized by the legislature as being unprofessional. No more particularity than that can be expected in such a proceeding as is pending before the board.

The order of the trial court is affirmed.

Affirmed.